## Tucker vs. Rankin.

The fact that but two commissioners of highways were present when a proposed road was surveyed, and signed the survey, is not of itself a fatal objection to the validity of their acts. In the absence of evidence to the contrary, it will be presumed the third commissioner met and consulted with them in reference to their proceedings, at or before the time the paper was signed.

The provision of the statute (1 R. S. 525, § 125) declaring that " any two commissioners of highways of any town may make any order, &c. provided it shall appear in the order filed by them, that all the commissioners met and deliberated on the subject embraced in such order, or were duly notified to attend a meeting of the commissioners for the purpose of deliberating thereon," did not abrogate, or change in regard to those officers, the common law rule in reference to the execution of a power of a public nature, by a majority of the officers intrusted with it; or the rule of presumption applicable to such cases.

The view taken of that section in *Fitch* v. *The Commissioners, &c. of Cortland*, (22 *Wend.* 132,) was not well considered, and is not warranted by the cases cited in support of it.

A writing, signed by two commissioners of highways and a surveyor, which, although it does not contain a formal order laying out a highway, purports to be a survey of a *road*, describes the center line, and states where the road is to commence and terminate, and which writing is filed with the town clerk and made a part of the records of the town, is to be considered as intended by the commissioners as a survey and order establishing the road, and is a substantial compliance with the section of the statute, (1 R. S. 514, § 63,) in respect to incorporating an order in the survey. JOHNSON, J. dissented.

THIS was an action for a trespass alleged to have been committed by the defendant, in entering upon the plaintiff's land in the town of Greece, Monroe county, and breaking down and removing his fences, and tearing up the soil, &c. The defendant, by his answer, denied the facts set forth in the complaint, and alleged that a road or public highway had been duly and lawfully laid out and established, before the time of any of the alleged tresspasses set forth in the complaint, by the commissioners of highways of the said town of Greece, on or through the ground where the plaintiff alleged the trespasses were committed, and that a survey of said road according to the requirements of the statute in such case made and provided, had been duly filed with the clerk of the said town, and such proceeding had by the commissioners of said town, as to establish said road, or public

highway, over and through the ground aforesaid; that after the survey and filing as aforesaid, and after the said road had been so established by the said commissioners, one John Baker, who claimed to be the agent of the plaintiff, fenced up and obstructed said road, which fence was taken down by the defendant, or by others at his request, in order to open said road, which was a part of the trespass complained of by the plaintiff in his complaint, and which was only about three rods of temporary fence, and which fence or obstruction was removed by the defendant, or by his order, as the overseer of highways in the beat or district in which said road lay. That the defendant was an overseer of highways in the town of Greece, and in the district through which said road run, or was established at the time of the alleged trespass, in the complaint set forth, and as such overseer, he was ordered by the commissioners of highways of said town to call out the inhabitants in said beat or district and work and improve said road; that in pursuance of such direction or order, he did warn out such inhabitants as were liable to work on said roads, with teams, plows and scrapers, and did on the 8th day of November, 1849, go on and work said road, and did plow, scrape, &c. and work said road, committing no damage or trespass on the plaintiff by so doing, nor in any way interfering with any land or premises belonging to him; which was the trespass and only trespass complained of by the plaintiff in his complaint, as having torn up his ground, &c. The defendant further denied that the plaintiff owned or had any right in the land or ground over which said road so runs, or that he ever had any interest in, or owned the said ground; but that one John Baker occupied a farm adjoining said road for several months; and that a portion of the fence of said farm so occupied by Baker, encroached upon the said road or highway, as originally surveyed and recorded; that on a resurvey of said road, by commissioners of highways, according to said original survey (which had been duly recorded with the clerk of said town) it was found that the fence of said premises, so in the possession of said Baker, or several rods of said fence, encroached upon the line of the road; and ascertaining that fact, the commissioners of highways

Tucker *v.* Rankin.

duly notified Baker to remove the said obstruction within sixty days, as required by the statute in such case made and provided, which Baker neglected and refused to do; and the said Baker not having denied in any way the said encroachment as required by the statute, the said obstruction or fence was caused to be removed by the commissioners of highways after the sixty days had expired, and which was the other part of the trespass complained of by the plaintiff, and done to his said fence.

By an amended answer the defendant alleged that the place where the trespass was alleged to have been committed was a portion of a highway, the ground of which was formerly given or dedicated by one Frederick Bushnell, to wit, in 1835, then the owner of the land over which said road was established, and that he was in the actual possession of said land, and had the full right and power to give or dedicate the same for the purpose aforesaid : and further, that the said road was surveyed by the consent, direction or instruction of said Bushnell, on the ground where the said trespass was alleged to have been committed, and such survey bill filed with the clerk of the town of Greece, and such proceedings had, that a road was laid out, established, and worked as a highway as aforesaid ; and that the same had never been annulled or changed up to the time of the commencement of this action, by any act of the commissioners of highways of the town of Greece ; and that the defendant was in the discharge of his duty as overseer of highways, of the highway district in which this road was located, at the time and place where the said trespass was alleged to have been committed ; and that said highway had been duly and properly established as such.

The plaintiff by his reply denied that the place where said trespasses were committed, was a portion of a highway, the ground of which was given or dedicated by Bushnell in 1835 ; but he admitted that said Bushnell was then the owner of the land where said trespasses were committed ; and he denied that any road, on or through the land where said trespasses were committed, was ever dedicated by said Bushnell, or surveyed or laid out by him or under his directions, or any such survey had and

filed, as in the answer was alleged; and he denied that any such road was laid out, established and worked as a highway, as alleged; and he denied that the defendant was in discharge of his duty as overseer of highways of any highway district, in committing the trespasses in the complaint set forth; he also denied that such alleged highway was ever duly and properly established as such.

The action was brought to trial before a jury, at a circuit court held at the court house in Rochester, on the 19th day of January, 1852, before the Hon. T. R. STRONG, one of the justices of this court.    The plaintiff, to maintain the issue on his part, called John Baker as a witness, who testified that he held possession for the plaintiff, who claimed title and put him in possession of a farm of about 31½ acres, in the town of Greece, Monroe county, being the south half of lots 23 and 30, lying on the plank road leading from Rochester to Charlotte, which road bounded said farm on the east; on the north there was a crossroad running east and west, coming out to the plank road.    The dwelling house on the farm was about 30 feet west from the plank road and about 20 rods from the cross-road; that the fence of the farm fronting said plank road was a post and board fence, and on the cross-road a rail fence.    That the defendant, on the 8th day of November, 1849, tore down about three rods of the fence on the plank road, and carried off the same, and left the land open to cattle, which came in during the night and destroyed about $30 or $40 worth of vegetables, and injured the fruit trees in the orchard.    That he (the defendant) then came on to the plaintiff's land on the inside of said fence, and by plows and scrapers, moved off a large portion of the soil inside of the fence, which had been manured and prepared for gardening purposes, and carried the same to a place north of said farm; and the plaintiff proved the damage caused thereby, and rested.    The defendant called Giles H. Holden, who testified that Frederick Bushnell owned the lands on both sides of the cross-road in the year 1835. The witness was then asked the question, if he knew the fact of said Bushnell dedicating a highway through the center of lots 23 and 30.    This was objected to as immaterial, and also that a

Tucker *v.* Rankin.

dedication was not a laying out under the statute, so as to form a foundation for the proceedings under which the defendant, in his answer, sought to justify said trespass. The objection was overruled by the court, to which decision the plaintiff excepted. The witness then went on to state that the road passing through lot No. 20, at that time, went round the west side of lot No. 23, and the north side of 23 and 30. That in 1835 the witness suggested to Bushnell the propriety of continuing the road through lots 23 and 30 to the river road, and he assented, if it were practicable. That two of the commissioners came on to the land with witness and Mr. Bushnell, and they went over the proposed route together; that the witness had a practical knowledge of engineering; that the witness surveyed the road through, and made a bill of the survey, which he handed to the two commissioners. That survey was now produced, and the witness then proved his signature to the same, and the signatures of the two commissioners to said survey, which survey was in the words and figures following:

"A survey of a road in the center of the east line of lot No. 20, of the second division of lots in township No. 2, in the town of Greece; thence east 150 rods to the west line of the river road; to be a direct continuation of the road running east and west through the center of lots numbers 11, 14 and 20; and thence continued through lots numbers 23 and 30, until it intersects said river road, and parallel with the north and south lines of the above mentioned lots.

Dated Greece, March 17, 1835.   B. W. HUSTON.

HENRY DEYO.

G. H. HOLDEN, surveyor."

The reading of this was objected to on the ground that it was a mere survey; that there was no order laying out the road as required by the statute; that it was signed by only two commissioners, and there was nothing on the face of it showing that the other commissioners had been notified and neglected to appear; nor any evidence of that fact *aliunde.* The objection was overruled, the plaintiff excepted, and the survey was then read. And the witness further testified, that there was nothing

particular said about the width of the road; that they assumed it was four rods wide and so surveyed it; that when they came to the river road, now the plank road, it was suggested to mark the width of the road, and it was so marked four rods wide; two rods on each side of the center line; the ax-man marked a line on the trees and stumps for the center of the road as it was run; and Mr. Bushnell was present, aiding, assisting and directing. The witness was pathmaster at that time, and immediately afterwards worked the road through as marked; keeping within the boundaries of the four rods; and that it was kept open as a road ever since, and used by the public as such; that after he finished working it, he called out the commissioners to view it, who examined and approved his work. On his cross-examination, the witness testified that the board fence torn down by the defendant was beyond the south line of the road so laid out and worked as aforesaid; and that the marks or monuments for the center line, made in 1835, were still visible at the river road; that this board fence was put up by Mr. Bushnell himself the following year; that the road was run or intended to be run due east and west, which was very nearly the course of the road as it had been used from the time of its laying out to the time of the fence being torn down in 1849. The witness further testified, that immediately after the laying out of said road in 1835, Bushnell erected fences on both sides of the road on the line so run out, and that the board fence erected by him remained there until removed by the defendant in 1849. The line or survey was intended to represent the road laid out; the road as worked had been used by the public since it was opened in 1836, as a highway. The commissioners of highways at that time paid witness $25 from the town money, for cutting out and opening said road. That after said road was opened, he called on the commissioners of highways to inspect it to see if it had been done according to contract; that two of them came on to the road, examined and accepted it and paid him $25; witness was pathmaster of that road district the year the road was cut out and opened. The

defendant then proved the signatures of the commissioners of highways to the following paper.

"Monroe county, town of Greece, ss.—We the undersigned commissioners of highways of said town, having ascertained that the public highway therein; leading from the southwest corner of Lawrence Graty's farm, and running easterly through the center of lots numbers 11, 14, 20, 23 and part of 30, to the river road, is encroached upon on the south side thereof, along the lands in the occupation of John Baker, by a rail fence erected by the present or some former occupant thereof, which forms part of the enclosure of said land, and having caused the said highway to be surveyed, we find the encroachments to be as follows : at the west line of land occupied by John Baker, being line between lots numbers 20 and 23, the encroachment is six links ; at the west of a small framed house the encroachment is fourteen links ; about twenty rods to the east of said frame house the encroachment is fifty-one links ; at the line between lots 23 and 30 the encroachment is the entire width of the road, and extends four links beyond the north line of said road ; at the intersection of said road with the river road in lot No. 30, the encroachment is over the entire width of the road, and extends twenty-two links north of the north line of said road, and that all that narrow strip of land lying between said fence and the line above described is a part of the public highway aforesaid, excepting the narrow strip four links in width at the west line of lot No. 30, and twenty-two links in width at the river road, which belongs to the land on the north side of said road. It is therefore ordered by the undersigned commissioners of highways of said town, that the said rail fence be removed, so that the said highway be open and unobstructed, and of the breadth originally intended, which was three rods. Given under our hands, this 11th day of August, in the year of our Lord 1849.          ELI P. MOULTER,
                    JOSEPH NORTHROP,
                    FRANCIS. GALLERY,
                              Commissioners."

"To Mr. John Baker :  Take notice, that an order, of which

Tucker *v.* Rankin.

a copy is hereunto annexed, has been made by the undersigned, the commissioners of highways of the town of Greece, in the county of Monroe, and you are hereby required according to the statute in such case made and provided, to remove the fence therein mentioned within sixty days after the service of this notice.                    E. P. MOULTER,

JOSEPH NORTHROP,

FRANCIS GALLERY,

Commissioners."

Elias Avery, sworn on the part of the defendant, testified, that he resided in the town of Greece ; was the clerk of said town; he then produced the survey, &c. made by the witness Holden, in 1835, of said road, and proved that the same was filed the 17th day of March, 1835, and was a part of the records of said town ; at this time the witness also produced, and proved that the same was on file in his office as such town clerk, the survey and diagram of said road, made by F. I. M. Cornell, signed by the commissioners of highways, of said town, dated the 11th day of August, 1849, and filed in said town clerk's office on the same day, The plaintiff also proved that a copy of the said order and notice was served on the 15th day of August, 1849, on the occupant of the land in question, and then offered to read the same in evidence. This was objected to on the grounds, 1st. That there was no foundation laid for such proceedings ; that there was no laying out under the statute proved, to authorize such proceedings, and give the commissioners jurisdiction to act. 2d. That the defendant had proved a road by dedication, and he also showed that the land in question was no part of that road so dedicated, and that the road dedicated was not the road described in the order. 3d. That there was no order laying out the road in question, so as to authorize such proceeding. 4th. That if this land which was claimed as in the road was ever legally laid out, it was not worked within six years after such laying out, but that a different road from that described in the order was worked, and therefore, even if properly laid out, it ceased to be a road for any purpose whatever. 5th. That the plaintiff was not estopped by the pro-

ceedings of the commissioners, as he was not a party to them; and that the mode pointed out by the statute of denying the encroachment, and the mode of trying the question on such denial, was unconstitutional and void.    6th. That the notice itself did not state the encroachment complained of, and in the order the same was insufficiently described; that a three rod road was described, and not a four rod road as proved by the defendant to be the road dedicated.    These objections were severally overruled, and the plaintiff excepted to the decision of the court, and the order was read.    The defendant then proved, that at the time of the alleged trespass he was pathmaster of the town of Greece, and then rested.    The defendant, by his counsel, insisted that he had made out a perfect defense to the action of the plaintiff, and claimed that the court should nonsuit the plaintiff, unless the plaintiff desired to go to the jury on some question of fact, and no such desire was expressed.    The plaintiff, by his counsel, insisted that the defendant had not made out any justification, for the reasons before stated, and also because if the proceedings proved by the defendant were sufficient to authorize the defendant to remove said fence, they did not authorize its removal between the first of November and the first of April; but if they did, then the fence must not be torn down and the land left open in the manner defendant had done, but that he ought to have removed said fence to the line of road designated in the order of the commissioners, and not so doing he was a trespasser *ab initio.*    But the court decided that the defendant had, by the order of the commissioners and subsequent proceedings, made out a sufficient justification in law for the trespass complained of, and directed a nonsuit to be entered, to which opinion and direction the plaintiff excepted, and a nonsuit was accordingly entered.

The plaintiff moved for a new trial.

*J. D. Husbands,* for the plaintiff.

*J. H. Martindale,* for the defendant.

T. R. STRONG, J.   The consent of Bushnell, who was the owner of the land included in the highway in question, to the laying out of the highway, having been given, the commissioners of highways of the town had authority to lay out the same, without an application to them in writing or the agency of a jury of ' freeholders.   It is only when the consent of the owner of the land is not obtained, that such an application must be made and a jury called.   (1 *R. S.* 501, 502, § 1, § 2, 513, 514.   *Noyes* v. *Chapin,* 6 *Wend.* 461.)   A verbal consent of the owner was sufficient.   (*Baker* v. *Braman,* 6 *Hill,* 47, *and case last cited.*) The fact that but two of the commissioners were present at the survey and signed the paper designated by that name, is not of itself a fatal objection to the validity of their acts.   In the absence of evidence to the contrary, it will be presumed the third commissioner met and consulted with them in reference to their proceedings at or before the time the paper was signed ;  and if he did so the action of the two was valid.   (*Doughty* v. *Hope,* 1 *Comstock,* 79.   3 *Denio.* 598, 249.   *Downing* v. *Rugar,* 21 *Wend.* 178. *Crocker* v. *Crane, Id.* 211.   *Miller* v. *Garlock,* 8 *Barb.* 157. *Woolsey* v. *Tompkins,* 23 *Wend.* 324, 326.)   In addition to this presumption, there is evidence that the road was opened immediately, and worked by the overseer of highways in that district ;  that the commissioners were called upon after it was thus worked to examine the work ;  that two of them went and examined and accepted it and paid the overseer " $25, from the town money for cutting out and opening said road ;"  and that the road has ever since been used by the public as a highway.   The provision of the statute, (1 *R. S.* 525, § 125,) declaring that " any two commissioners of highways of any town, may make any order, &c. provided it shall appear in the order filed by them, that all the commissioners of highways of the town met and deliberated on the subject embraced in such order, or were duly notified to attend a meeting of the commissioners for the purpose of deliberating thereon," did not abrogate or change in regard to those officers, the common law rule made in reference to the execution of a power of a public nature by a majority of the officers intrusted with it, or the rule of presumption applicable to

Tucker v. Rankin.

such cases. It does not prescribe a form for the order of the commissioners when but two unite in it, the observance of which is to be indispensable to the validity of the order, and the failure to comply with which will render it void, whatever the evidence may be, and however strong, as to the other commissioner having been consulted and acted. The object of the provision was rather to declare, and perhaps enlarge, the common law power of a majority of the commissioners, than to restrict it. (2 R. S. 555, § 27. See notes of the Revisers, 3 R. S. 2d ed. 520.) The view taken of the section in Fitch v. The Comm'rs, &c. of Kirkland, 22 Wend. 132,) I am satisfied was not well considered, and is not warranted by the cases cited in support of it. A survey of a single line was sufficient. (People v. Commissioners of Salem, 1 Cowen, 23. Lawton v. Commissioners of Cambridge, 2 Caines, 179. People v. Commissioners of Redhook, 13 Wend. 310.) The writing which the two commissioners signed does not contain a formal order laying out the highway, but it purports to be a survey of a road, describes the center line, and states where the road is to commence and terminate. It was filed with the town clerk and made, as appears by the bill of exceptions, "a part of the records of said town." The signatures of the commissioners, and the placing the writing on file, show that it was intended by them as a survey and order establishing the road, and I think it was a substantial compliance with the statute in respect to incorporating an order in the survey. (1 R. S. 514, § 63.) No particular form was necessary, and the acts of such officers should receive a liberal construction. Regarding the road as legally laid out, the commissioners in 1849 had jurisdiction to take proceedings for the removal of an alleged encroachment, and their action—the encroachment not having been denied by the occupant in the mode provided by the statute—is conclusive that the encroachment existed. (Bronson v. Mann, 13 John. 460. Cow. & Hill's Notes, 1051.) As the encroachment was not removed, the commissioners might properly direct its removal. (Laws of 1840, 246, § 1.) And no question was made as to the authority of the defendant as overseer, to remove it, assuming that the commissioners had

such power. (*See also Wetmore* v. *Tracy,* (14 *Wend.* 250.) All the proceedings in respect to the finding of the encroachment, appear to have been regular. The plaintiff did not desire to submit any question of fact to the jury.

The motion for a new trial should be denied.

SELDEN, J. concurred.

JOHNSON, J.   I am unable to agree with my brethren in this case.   We all fully agree that highway commissioners are only authorized to order the removal of fences as encroachments upon highways, in cases where highways have been laid out according to the statute.   The point of disagreement is as to what constitutes a laid out highway, within the meaning of the statute.   The only evidence in this case of the laying out of this road as a highway, was the production on the trial, of a survey of the route of a road, dated March 17, 1835, signed by two of the highway commissioners and the surveyor, which was proved to have been filed in the town clerk's office, and proof that the two commissioners whose names were affixed to the survey, actually went on in company with the surveyor, and the owner of the premises, and assisted in running the line.

The road, as appears by the parol proof, was surveyed and marked four rods wide, although only the center line is described in the survey.   A short time after this the road was opened two rods in width, not on the line of the survey at the point where the fences were ordered to be removed, but near the line.   The road as opened was fenced by the owner of the land, and thus the road and the fences have remained about fourteen years, as then actually opened to the public.   The public never had possession of the portion directed to be opened by the order in question, and it remains to be seen whether they acquired and still retain any right to the possession, beyond the two rods actually thrown open and dedicated by the owner, by virtue of these proceedings to lay out a highway, if indeed any such act was ever contemplated by the two commissioners who are alone shown to have acted in the premises.   The statute

Tucker *v.* Rankin.

(1 *R. S.* 513, § 55) provides that when the commissioners shall lay out any road they shall cause a survey to be made of such road, and shall incorporate such survey in an order, to be signed by them, and to be filed and recorded in the town clerk's office. Can a road be laid out without such order? Clearly not. A survey is not sufficient; that is but a preliminary step. The award or judgment of the commissioners is made afterwards, and is embodied in the order, in which the statute directs the survey to be also incorporated. This order is the record of the determination of the commissioners to lay out the road, and is, in my judgment, the only legitimate evidence of such determination. Until the order is made and signed, the whole proceeding is imperfect, and if never made, all the preceding steps which might have authorized the making of the order, had the commissioners determined to make it, are of no validity or avail whatever, by way of divesting the owner of the soil of his rights and conferring them upon the public. When private property is taken, against the consent of the owner, for the use of the public, by virtue of a statutory proceeding, we should see that at least the essential requirements of the statute have been complied with.

I understand my brethren to hold that as this survey was signed by the two commissioners who assisted in making the survey and was caused by them to be filed in the office of the town clerk, it must have been regarded by them as an order, and should be held by the court to be such. But this is confounding the plain and obvious distinctions created and carefully preserved in the statute. The statute requires first a survey, then an order, in which such survey shall be incorporated, and this order is to be signed by the commissioners, and recorded. Now it seems to me that to say that no order need be made, but that the survey alone may be regarded not only as a survey and an order, but as a survey incorporated in an order, is simply to change the statute, and substitute for its plain, unequivocal requirements, the discretion or the assumed intentions of the commissioners. The commissioners signing the survey and filing it in the town clerk's office was of no consequence, as

Tucker *v.* Rankin.

nothing of the kind is required by statute. Those acts alone neither strengthened the public right nor weakened that of the plaintiff. It is enough that no order was in fact made laying out a highway, and a constructive order, which the commissioners may or may not have intended to make, or which they may have been ignorant enough to suppose they had made, can scarcely have potency sufficient to oust any one from his hitherto undisturbed possession.

In my opinion no presumptions are to be indulged in favor of the public, against the plaintiff. I think courts should presume that public officers, when acting for the public, intend to do just what their acts amount to in contemplation of law, and if those acts are not sufficient to give the public the rights they seek to acquire, they must begin de novo, and not call upon the court to assist by any loose and liberal construction of their acts.

What the commissioners in this instance did, and all they did, was to make a survey, two of them only—so far as appears—acting, signing this survey, and filing it in the clerk's office. Had this been done prior to the 14th of April, 1826, it would have been made good by the statute of 1830. (1 *R. S.* 520, § 98.) That section was framed and passed to cover precisely such a case as this, where a survey only had been filed, and shows that the legislature well understood the difference between a survey and an order. But unfortunately this survey was quite too late for the benefit of the healing virtues of that act, and cannot share in its confirmation of official errors. The legislature had the power to give to imperfect proceedings the same force and effect that belonged to those which fully complied with the requirements of the statute, by a specific enactment. But courts have no such saving or dispensing power, and should never usurp the functions of the legislature, under the guise of construction. I am clearly of the opinion that this road was never laid out by the commissioners, whatever they may have intended to do; and that all the right the public had was to the two rods fenced out by the owner, which operated as a dedication to that width. Consequently that the

order of the commissioners to remove the plaintiff's fence as an encroachment was wholly unauthorized and afforded no protection to the defendant.

New trial denied.

[MONROE GENERAL TERM, March 7, 1853.   *Selden, Johnson* and *T. R. Strong,* Justices.]