THE PEOPLE OF THE STATE OF NEW YORK ex rel. CALEB WELLS, RESPONDENT, v. EBEN BROWN, AS SOLE COMMISSIONER OF HIGHWAYS OF BOLTON, WARREN COUNTY, APPELLANT.

*Laying out of a highway by referees on an appeal from a decision of a commissioner of highways — 1 R. S., chap. 16, tit. 1, secs. 58, 63, 91 — what is a sufficient description of the road — notice must be given to owners and occupants before laying out the road.*

By enacting chapter 114 of 1880, exempting certain towns of this State from the provisions of chapter 431 of 1875, the legislature intended to dispense in the towns affected by the former act, with the requirement contained in section 58 of title 1, chapter 16, part 1 of the Revised Statutes, providing that a proposed highway cannot be rightfully laid out without the consent of the owners or occupants, unless twelve reputable freeholders of the town certified it to be necessary, and to substitute in place thereof a petition of at least six freeholders.

Upon an appeal from an order of a highway commissioner, refusing to lay out a highway, the referees reversed his decision and made an order laying out the road, describing it by courses and distances from termini to termini, commencing at a definite point, capable of identification, and running by definite courses and distances to the center of a highway. The order did not state that the prescribed route was to be the center of the proposed road, nor state the width contemplated, but it described the highway as laid out in accordance with the application

made to the commissioner, which application stated the proposed course, so adopted by the referees, to be intended for the center of the proposed road.

*Held*, that this description was a sufficient compliance with the provision of section 63 of title 1, chapter 16, part 1 of the Revised Statutes, requiring the referees to describe the road laid out, " particularly by routes and bounds and by its courses and distances."

*People ex rel. Waters* v. *Diver* (19 Hun, 263) distinguished.

It appeared that a notice was, pursuant to law, given to the applicant, the commissioners of highways of the town, and the owners and occupants of the land over which the road was to pass, at least eight days before the time of their meeting, specifying the time and place of the hearing of the appeal. On the day appointed the referees met, reversed the order of the commissioner, and on the same day laid out the road, the same order that reversed the order of the commissioner also laying out the highway.

*Held*, that, as the referees were required, by section 91 of chapter 16 of part 1 of the Revised Statutes, to proceed in the same manner as commissioners of highways are directed to proceed in like cases, they should, on reversing the order of the commissioner, have given at least three days notice to the land owners and occupants, and that as this notice had not been given, the order laying out the road was void for want of jurisdiction.

APPEAL from an order, made at Special Term and entered in Warren county, directing a peremptory *mandamus* to issue.

*Louis M. Brown*, for the appellant.

*S. H. Bevins*, for the respondent.

FISH, J. :

The Special Term ordered a peremptory *mandamus* to the appellant, commanding him as commissioner of highways of the town of Bolton, to proceed according to law to the opening and working of a highway in said town which had been laid out by an order of the referees appointed by the county judge of said county, on the 2d of November, 1883. There had been no jury of freeholders called, nor any certificate of twelve freeholders of the town certifying said highway to be necessary.

On the 8th of June, 1883, the relator and six other residents and freeholders of the town of Bolton presented a written petition to Alonzo Lane, the commissioner of highways of the town, praying for the laying out of the highway in question. The petitioners described themselves as residents and freeholders liable to be assessed for highway labor in said town, and that the real estate of said

town, as then assessed by the last assessment-roll of the town, was at an average price of less than five dollars per acre. The proposed highway commenced in the center of the highway leading from the residence of A. A. Anderson to Edgecomb pond, and south fourteen degrees and thirty minutes east sixty links from a maple tree cornered and marked; and from that point the route of the proposed highway was described by courses and distances, and ending in the center of the highway leading from Federal hill to Caleb Wells, and at a point where Rufus Randall's east line crosses said highway. The petition then stated that said survey was intended for the center of the proposed highway, and named the persons over whose improved and cultivated lands the same would pass. The said Alonzo Lane then, assuming to act as sole commissioner of highways of said town, proceeded to hear and consider the application, and on the twenty-fourth of June made a formal order by which he ordered and determined that said highway be not laid out. Thereupon the relator appealed to the county judge of Warren county, who appointed the referees who laid out the road or highway in question, by an order dated November 2, 1883. The order of the referees described the route by the same courses and distances as in the petition of Caleb Wells, the relator, commencing and ending at the same points, but omitted to state that the route so described was to be the center of the road, as was stated in the petition.

The defendant Brown has since been elected commissioner of highways of the town, in the place of Lane, and Brown has been substituted as defendant in these proceedings. The appellant now insists that the order laying out the highways was invalid because of divers omissions and irregularities, so that the same was never legally laid out. First. As the proposed highway passed over inclosed, cultivated and improved lands, it could not rightfully be laid out without the consent of the owners or occupants, unless twelve reputable freeholders of the town certified it to be necessary. According to the provisions of the Revised Statutes prior to 1880, the certificate of the freeholders was a condition precedent to any proceeding in such a case. (See § 58 of tit. 1, chap. 16, part 1, R. S., p. 514.) It is claimed that the provisions of chapter 114 of the Laws of 1880, have had the effect to dispense with the above requirement as to a jury of freeholders in the town of Bolton.

The title of the act last named, does not seem to contemplate such a change in the law.   It in terms exempts certain towns from the provisions of chapter 431 of the Laws of 1875.   Chapter 431 of the Laws of 1875, did not in anywise allude to or affect the requirement of section 58 of the Revised Statutes above cited, but related solely to the mode of obtaining a jury in those cases where a jury was necessary, and the duties of the town commissioners after the jury had done their work ; so that so far as the act of 1880 exempted the town of Bolton from the provisions of the act of 1875, it did nothing more than to leave the town of Bolton, in that regard, the same as if the act of 1875 had not been passed. The act of 1880 exempted from the provisions of the act of 1875, all the towns of the State whose real estate is assessed as shown by the last assessment-rolls at an average price of less than five dollars per acre.   It appears by the petition and papers in the proceedings to lay out the road in question, and was not controverted, that the town of Bolton comes within the last named proposition.   Its real estate was assessed by the last roll at an average price of less than five dollars per acre.   But the act of 1880 went farther and was more comprehensive than the reading of its title would, at first impression, indicate.

Section 2 goes on to provide that the commissioners of highways in the towns so exempted (that is, such towns as have been assessed upon their real estate at an average of less than five dollars per acre) shall thereafter upon the written petition of six freeholders of such town, and within thirty days from the date of such petition, proceed to lay out the road designated in the petition, etc., and thereupon the proceedings of said commissioners shall be deemed lawful, and any road so laid out shall become a highway and remain open to the public travel.   This act has not been repealed or affected by any subsequent legislation, and is the law applicable to the town of Bolton.   It is quite clear that the legislature intended to dispense with the jury in that class of towns and to substitute the petition of at least six freeholders in the place of the jury.   Under the Revised Statutes, any person liable to be assessed for highway labor, could apply to the commissioners of highways to lay out a new road, and upon the action of a jury of twelve freeholders, certifying to the necessity of the road, it was the duty of the commissioners to act upon the same.

By the act of 1880, at least six freeholders must petition for the purpose of setting the commissioners in motion, but no jury is required. It cannot within reason be held that it was the intention of the legislature to make it more difficult to initiate such a proceeding in a town where the real estate was low-priced and of small value, than sufficed in a town where greater value was involved.

Second. By section 63 of title 1, chapter 16, part 1, R. S., pp. 514, 515, it is provided that if the commissioners of highways shall determine to lay out the road applied for, they shall make out and subscribe a certificate of such determination, " describing the road so laid out particularly by routes and bounds, and by its courses and distances, and shall deposit the same with the town clerk ; " and by a provision of section 55, they shall cause a survey to be made of such road, and shall incorporate such survey in the order to be signed by them.

The order of the referees in this case described the courses and distances of the proposed road from termini to termini, commenced at a definite point quite capable of identification, and ran definite courses and distances to the center of a highway leading from Federal Hill to Caleb Wells. The order did not state that the prescribed route was to be the center of the proposed road, nor state the width contemplated, but it described the highway laid out in " accordance with the application of Caleb Wells before referred to, and which application did state the proposed course so adopted by the referees to be intended for the center of said proposed road.

The description thus given is a sufficient compliance with the statute according to adjudicated authority, and has reference to the object to be attained. (*People ex rel. McFarland* v. *Com'rs of Salem,* 1 Cow., 23 ; *People ex rel. Thomas* v. *Com'rs of Milton* 37 N. Y., 360 ; *Woolsey* v. *Tompkins,* 23 Wend., 324 ; *Tucker* v. *Rankin,* 15 Barb., 471 ; *McCarthy* v. *Whalen,* 19 Hun, 503.)

This court may safely adopt the theory and language of the learned justice at Special Term, in that " all public highways are to be laid out not less than three rods wide. Where no greater width is specified in the order, the fair presumption would be that it should not exceed the minimum, and the opening to a greater width could not be enforced against the owners of the land through which the road is laid."

In so far as the authority of *The People ex rel. Waters* v. *Diver* (19 Hun, 263), seems to hold a different doctrine, it may be answered that the case quoted presented a different state of facts, and it was a case of a review on *certiorari*, where the court exercised its judicial mind directly, as to whether the road ought to be laid out with so indefinite a description, and reversed the order of the referees. The proposed road in that case had no definite starting point, had no fixed line of course and had no fixed termini. Here no appeal was taken nor proceedings to review the order of the referees, so that it stands unreversed and can only be disregarded on the ground of its being an absolute nullity.

Third. It was perhaps questionable whether Lane, who was acting as commissioner of highways, at the time this motion was made and heard before the Special Term, was an officer *de jure*.

He certainly was an officer *de facto*, was performing the duties of the office and receiving pay therefor from the town. He was entirely willing to hold the place and act as long as he could be available as an obstruction to the laying out or opening of the road, but promptly pleads his own wrong when sought to be coerced in the same business in favor of the enterprise. As the objection is personal to him and has no relation to the regularity of the laying out of the road, no damage could come to anyone but himself if he was obliged to proceed to complete business he had thrust himself into. But the order at Special Term is directed to him only as commissioner of highways, and he is only bound to observe the directions of the order so long as he continues nominally to fill the place. Since the decision at Special Term, Lane has abdicated and surrendered the place to the present defendant Eben Brown, who has come in and been substituted as defendant in these proceedings. Brown is conceded to be regularly in office and is in no danger of committing trespass in the opening of the road. As he is now the sole commissioner of highways of the town, it is his duty to take up the subject where Lane left it and observe the order of the court in the matter of opening the road.

This disposes of all the questions raised at Special Term in opposition to the motion for the *mandamus*. As a rule, a party can only be heard on appeal upon the questions raised below. A point of objection not raised at Special Term, it may be assumed,

would have been cured there had it been raised, and may be regarded as having been waived. But the appellant now makes the point that it does not appear that the referees before proceeding to lay out the road gave to the occupants of the land over which the road was to pass the notices required by the statute, and asks the court on appeal to hold the order of the referees void for that reason. This raises a jurisdictional question, and such a question may be raised at any time.

The order of the referees, of November second, laying out the road recites that due notice pursuant to law was given to Caleb Wells the applicant, to the commissioners of highways of the town, and to Jacob Van Denberg and others, owners and occupants of the lands, at least eight days before the time of convening of the referees, specifying the second day of November, at ten o'clock in the forenoon, at the dwelling-house of Caleb Wells in said town, as the time and place of hearing of said appeal. The fact that such notice was regularly given and served is not controverted, and is conceded by the appellant.

The whole proceeding of the referees in hearing the appeal reversing the order of the commissioner and the laying out of the road was done on that day. The same order that reversed the order of the commissioner laid out the highway, and the proceeding was consumated upon eight days' notice to the applicant, to the highway commissioner, and to all the land owners and occupants. Such notice was all that the statute required to be given to the commissioner of highways and to the applicant, and a longer or better notice than was required in any case to be given to the land owners and occupants. Following the letter of the statute and the argument of the learned counsel for appellant, the land owners and occupants had longer and better notice of the hearing of the appeal and laying out of the road by the referees than was required by the statute.

The point taken by the counsel for appellant is, that no notice whatever of the hearing of the appeal was required to be given to the land owners; but that when the appeal was heard, and the referees decided to reverse the order, then the notice of three days to the land owners of the actual laying out of the road, and of a day of hearing, was necessary, where the referees would meet to perform that duty.

Assume this position as sound, the land owners would practically have no notice until the judgment of the referees had been pronounced. All there was of the hearing of the appeal was the question whether the road ought to have been laid out by the commissioner. In deciding to reverse the order of the commissioner, the referees decided that the road ought to be laid out. One proposition follows the other. In fact, the moment the referees reversed the order of the commissioner it became their duty to proceed and lay out the road. The statute is imperative. (Sec. 91 of chap. 16, before cited, 1 R. S., p. 519) The statute declares that they shall proceed in the same manner as the commissioners of highways are directed in like cases. The statute requires that such cases, when heard by the commissioners of highways, shall be upon at least three days notice to the land owners and occupants; and the adjudicated cases hold this notice to be necessary where the road is laid out by the referees; that notice is necessary to give them jurisdiction to act; and an order laying out a road without the notice is void for want of jurisdiction. (*People ex rel. Odle* v. *Kniskern*, 54 N. Y., 53; *Terpening* v. *Smith*, 46 Barb., 208; *People ex rel. Crooks* v. *Sweet*, 18 Week. Dig., 258.) So that it must be held that when the referees had decided to reverse the order of the commissioner it was their duty to fix upon a day of hearing, and cause three days notice to be given to the land owners and occupants of the time and place when they would proceed to lay out the road.

In this case it does not appear that such notice was given. The omission must be held fatal to the validity of the order of the referees; so that no lawful highway was made. It would be a trespass upon the lands over which the alleged road is made to run for the commissioner to go upon the lands and open the same. For this reason, and upon this ground alone, the *mandamus* should be denied.

It follows that the order of the Special Term, directing the issuing of a *mandamus*, must be reversed and motion denied, with ten dollars costs and disbursements on appeal, and ten dollars costs of motion below.

Landon and Parker, JJ., concurred.

Order reversed, with ten dollars costs and printing disbursements, and motion denied, with ten dollars costs.