J. Irwin Shapiro, J.
Motion ‘ ‘ for an order striking out the Answer of the defendant, on the ground that it is sham and frivolous and for summary judgment, pursuant to Section 3212 CPLR for the relief requested in the Complaint ’
Plaintiffs own a parcel of land in the Arverne I Urban Renewal Area in the Borough of Queens. On April 20,1967, the Board of Estimate approved the Arverne Urban Renewal Plan and the acquisition of property in the urban renewal area “ by negotiation (and if necessary by condemnation) ”. Thereafter, on February 14, 1968, the Mayor approved the action of the Board of Estimate and directed acquisition of the property in the Arverne I Urban Renewal Area, either by the Housing Development Administration (HDA), through negotiated purchase, or by the Corporation Counsel through condemnation proceedings.
Pursuant to the resolution and a directive from the Mayor, HDA has been negotiating to purchase as much of the property in the Arverne Renewal Area as can be acquired in that fashion. In accord with its procedure, HDA caused plaintiffs’ property to be appraised by two different appraisers employed by its Appraisal and Negotiation Division. One appraiser appraised plaintiffs ’ land and building at $46,000, while the other appraiser appraised them at $51,600. HDA recommended acquisition at the 'higher price and its recommendation was approved by the Federal agency. Thereupon HDA offered plaintiffs $51,600 for their parcel. Although the assessed value of the property is $45,000, plaintiffs rejected the offer of $51,600 on the ground that it was inadequate. Intermittent negotiations thereafter between plaintiffs and the city have not resulted in a meeting of the minds as to price.
Plaintiffs thereupon commenced this action to compel the city to condemn their parcel forthwith or, in the alternative, for a declaration that their parcel does not lie within the Arverne I Urban Renewal Area. They now bring this motion for summary judgment on the ground that the city’s conduct vis-a-vis plaintiffs constitutes a de facto taking of plaintiffs ’ property.
Plaintiffs contend that by acquiring for urban .renewal purposes all the property in the area of plaintiffs’ parcel and by thus far failing to acquire plaintiffs’ parcel, the city has rendered plaintiffs’ parcel unsalable. In substance, the complaint charges that the city has dealt unfairly with plaintiffs. Before plaintiffs may recover a judgment in this action, they must show that the appraisal of their property by HDA and the offer to purchase based thereon are so low as to be wholly inconsistent with the actual value thereof. In addition, plaintiffs must show a de facto taking of their property by the city.
*830 Ordinarily, in the absence of direct governmental interference with the use and enjoyment of property, a de facto taking will not be held to exist. (29A C. J. S., Eminent Domain, § 135, pp. 533-534; cf. Rosenberg v. State of New York, 24 Misc 2d 960 [Court of Claims, I960].)
In Niagara Frontier Bldg. Corp. v. State of New York (27 A D 2d 329), the State notified a tenant by letter that condemnation was imminent, and that he should vacate at the earliest possible date. He and all the other tenants — who had learned of the letter indirectly — thereupon vacated. The lower court awarded damages with respect to the rental loss as to the addressee-tenant in the amount the owner would have received but for the letter, and based the award upon the sending of the letter and the commencement and subsequent abandonment of condemnation proceedings. In reversing and ordering a new trial (27 A D 2d 329-330), the court held that even such overt acts as the sending of the letter and the abandonment of the condemnation proceedings did not constitute a de facto condemnation if the subsequent delay and abandonment did not reflect bad faith on the part of the State.
In Foster v. City of Detroit (254 F. Supp. 655 [E. D. Mich, 1966]), where the condemning authority was guilty of bad faith, an opposite result was reached. There, pursuant to plans adopted in February, 1949, condemnation proceedings were commenced in June, 1950; a lis pendens was filed against the properties in the slum clearance area, and all the affected owners were notified. In 1954, the city acquired and cleared 16 of 25 blocks in the area, not including the plaintiffs’ property. In 1955, in the course of a dispute with the city, the FHA issued a stop order against further work on the plan. In June, 1960, the condemnation proceedings were abandoned, and the lis pendens was canceled. Meanwhile, a new renewal plan had been approved by the Federal authorities and new condemnation proceedings — again including the plaintiffs’ property — were instituted in 1961.
At the time of the earlier proceedings, plaintiffs had been told not to do anything to improve their building. They were merely to keep the heat and hot water on. They were told they would receive no compensation for subsequent improvements, and were required to sign a waiver of compensation in order to obtain building permits. Welfare tenants were ordered to move. Subsequent to the 1954 bulldozing, plaintiffs lost their tenants and their insurance. Due to ensuing deterioration, the building became unsafe, and the city required the owners to demolish it at their own expense. Thereafter, ivhen the old condemnation proceeding had been abandoned and the new proceeding was *831 commenced, the city attempted to limit plaintiffs’ award to the value of the vacant land. Based upon a 1963 valuation, a limited award was made by the State court. The Federal court, however, awarded plaintiffs the value of their land and building as of 1954, the time when the city razed the neighboring properties.
The ratio decidendi for the decision was the court’s finding ■that11 the city actually encouraged and aggravated [the] deterioration after the commencement of the proceedings through the actions of various city officials ”. (254 F. Supp. 662.) Here there is no act of bad faith, for the facts show that the city has proceeded with diligence to acquire the property in the Arveme I Urban Renewal Area and no attempt has been made to encourage deterioration in order to hold down condemnation awards, or at least there is a question of fact in that connection, thus precluding an award of a summary judgment.
In City of Cleveland v. Carcione (118 Ohio App. 525 [1963]), another leading de facto condemnation case, the City Council declared the property appropriated in 1959, but the proceedings to fix compensation for plaintiffs’ property were not had until 1962. The plans had been adopted in 1957. As was the case in Foster, welfare clients were ordered to move out, other inhabitants were urged to leave, and buildings were demolished piecemeal as acquisition progressed. By the time of trial, only some 35 to 40 structures (out of an original 584) — including plaintiffs’— remained “in a vast desert”, (p. 527.) Plaintiffs’ building was vandalized to the point of dilapidation. Under the circumstances, the Ohio Court of Appeals held that the trial court should have determined the value of the property “ immediately before the city of Cleveland took active steps to carry out the work of the project which to any extent depreciated the value of the property ’ ’. (p. 533.)
In the instant case, there is no showing that the city encouraged plaintiffs’ tenants to vacate in order to minimize its condemnation awards. On the contrary, the city is itself presently occupying and paying rent on three of the six stores in plaintiffs’ building. Such action on the part of the city is hardly indicative of a desire to deprive plaintiffs of their property without just compensation, and negates the charge of bad faith levelled against the city.
There is here no showing that the city does not intend to justly compensate plaintiffs for their building when it is taken or that it will not be compelled to do so by the condemnation court. The plaintiffs do not deny that the city is bound to acquire all the property (including theirs) in the Arverne I Urban Renewal *832 Area, but they fail to note that the city may not commence condemnation proceedings until all proceedings to acquire land by negotiation in the Arverne I area have been concluded so that it will know which parcels must be condemned.
In the condemnation proceedings, plaintiffs will have the opportunity to present their claim for damages in its entirety. They have no special right to demand immediate condemnation of their property in preference to all other landowners in the Arverne I Urban Renewal Area. Nor may the court comply with their request that their property be withdrawn from the Arverne Urban Renewal, for as the court said in Matter of Board of Water Supply of City of N. Y. (277 N. Y. 452, 455 [1938]): ‘1 The extent, nature of the estate to be acquired, and the occasion of taking private property for public use rest in the discretion of the Legislature ”. (See, also, Society of New York Hosp. v. Johnson, 5 N Y 2d 102,107 [1958]; City of Mt. Vernon v. East Hudson Parkway Auth., 45 Misc 2d 471, 478 [Sup. Ct., Westchester County, 1965], affd. 23 A D 2d 849 [2d Dept. 1965].)
A determination by sovereign authority to take private property for public use may not be judicially struck down in the absence of a clear showing that the use contemplated is not a public one. (New York City Housing Auth. v. Miller, 270 N. Y. 333 [1936]; Minkin v. City of New York, 24 Misc 2d 818, 822 [Sup. Ct., N. Y. County, 1960], app. dsmd. 10 A D 2d 830 [1st Dept. I960].) Here there is no question that the prospective taking of plaintiffs’ property is for a public purpose. Hence this court may not interfere therewith. (People v. System Props., 2 N Y 2d 330; Matter of Young v. Gerosa, 11 A D 2d 67.)
Plaintiffs’ motion that their property “ be withdrawn from the Arverne Urban Renewal Area, or, in the alternative, this matter be set down for a hearing before the Court or a Referee to determine the value of plaintiffs’ property so that the defendant can take title thereto or, in the alternative that the defendant be directed to start condemnation proceedings against plaintiffs ’ property ” is in all respects denied.