Stewart F. Hancock, Jr., J.
By an order to show cause and accompanying papers the plaintiffs seek, among other things, an order in the nature of a writ of mandamus compelling the defendants to take the necessary steps to condemn plaintiffs’ property located in Syracuse at 208, 210-215 W. Water Street in Block 92 of the Syracuse Urban Renewal Project, known as 'Clinton Square Urban Renewal Project No. N. T. R-214.
*836 Adopting the liberal construction mandated by CPLR 104 and subdivision (c) of CPLR 103, and in the interests of a speedy and inexpensive determination of the matter, the court will treat the application as a petition in a special proceeding brought pursuant to CPLR article 78. The answering papers will be considered as a motion to dismiss the petition pursuant to subdivision (f) of CPLR 7804. The title of the matter may be amended to designate the parties as petitioners and respondents respectively, and they will henceforth be so called in this decision.
. It is alleged that respondents have effected a de facto taking of petitioners’ property by placing the property in the urban renewal project; attempting to acquire the property for urban renewal during protracted negotiations; advising petitioners that the property would be condemned; causing or contributing to the removal of petitioners’ tenants by entering the premises and advising the tenants that the property was being taken, and paying, in part, for their moving expenses.
There is authority for the issuance of a writ of mandamus if, in fact, it is established that respondents’ actions have amounted to a taking. (People ex rel. Sound Realty Co. v. Nicholson, 277 N. Y. 101; Cinco v. City of New York, 58 Misc 2d 828; Matter of Robinson v. Board of Supervisors of County of Del., 257 App. Div. 894.)
Respondents, on the other hand, relying on City of Buffalo v. Clement Co. (28 N Y 2d 241, 257), contend that there has been no de facto taking since “ the city never, by its statements or actions, directly or indirectly, interfered or sought to exercise any control over the property, thus inferentially depriving the claimant of its possession, enjoyment or use.” (See, also, Niagara Frontier Bldg. Corp. v. State of New York, 33 A D 2d 130; and Cicci v. State of New York, 31 A D 2d 733.)
Further, the city contends that after the rejection by the Federal Department of Housing and Urban Development of the city’s request for approval to buy petitioners’ property at $210,000, the plans were changed and the allocation of Federal funds for the acquisition of the property for urban renewal was rescinded.
Even if the acts of the city fall short of those required for a de facto taking and the consequent right of the property owner to compel a condemnation, they could, nevertheless, have resulted in substantial diminution in the Value of petitioners’ property and other damages. As stated in Niagara Frontier Bldg. Corp. v. State of New York (33 A D 2d 13, 133, supra):
*837 ‘ ‘ In sum, there was no appropriation, temporary or otherwise, prior to the de jure taking on June 13,1966, which would permit an award of damages therefor. However, claimant is not without relief. The State does not seriously dispute that its actions may have caused the tenants to move and while the State cannot be held liable for any alleged appropriation prior to June 13, 1966, it must respond in damages for any actions on its part which may have operated to decrease the value of the property in question. Thus, when the damages are evaluated on its claim for the de jure appropriation, the State should not be permitted to benefit from any loss sustained by claimant as the result of the State’s acts beginning in 1961.” (See, also, City of Buffalo v. Clement Co., 28 N Y 2d 241, 257, supra; City of Buffalo v. Clement Co., 41 A D 2d 41.) In these cases there were eventual takings in which the court could allow compensation for the pretaking diminution in value of the property on the basis of inverse condemnation or condemnation blight.
Whether a finding here that the actions of the city do not constitute a de facto taking under Clement (supra), would preclude any possibility of there being a recovery on any theory without an eventual condemnation proceeding, even if the city’s conduct is shown to have been unreasonable or unnecessarily prejudicial, this court does not decide. However, there is nothing in Clement {supra) as this court reads that decision, expressly limiting the right of the property owner to be compensated for the pretaking “ affirmative value depressing acts ” of the condemning authority to only those cases where the authority ultimately takes the property. It has been held in earlier decisions that the conduct of a governmental unit may be the basis for an award of damages for acts diminishing property rights in a court of equity even absent subsequent condemnation. (Ferguson v. Village of Hamburg, 272 N. Y. 234; Trippe v. Port of New York Auth., 17 A D 2d 472, revd. on other grounds 14 N Y 2d 119; Waller v. State of New York, 144 N. Y. 579; but, see, Beaux Arts Props. v. United Nations Development Corp., 68 Misc 2d 785, affd. 39 A D 2d 844.)
Whether .such compensation without an actual taking, if, in fact, it is found that petitioner is entitled to receive any, would be limited to the diminution in value of the property from the “ affirmative value depressing acts”; or could also include incidental damages such as loss of rentals and continuing expenses, this court does not decide. (See Niagara Frontier Bldg. Corp. v. State of New York, 33 A D 2d 130, affd. 28 N Y 2d 755.) See particularly Luber v. Milwaukee County (47 Wis. *838 2d 271), and Klopping v. City of Whittier (8 Cal. 3d 39), where compensation for such items was awarded. (See, also, Compensation Blight —A Problem in Compensability and Value by Julius L. Saekman, printed in 1972, Report of the State Commission on Eminent Domain, pp. 101-130, and Condemnation Blight: Just How Just Is Just Compensation by Gideon Kanner in 48 Notre Dame Lawyer, p. 765.)
Thus, an eventual decision by the court, based on the evidence, that the remedy of mandamus is not warranted might not necessarily preclude other relief. In Matter of Phalen v. Theatrical Protective Union No. 1 (22 N Y 2d 34, 41) involving an article 78 proceeding for a writ of mandamus where that relief was held to be improper, the Court of Appeals, in remanding to the lower court for appropriate relief including incidental damages, stated: “The improper form in which their action has been brought and their failure to request the appropriate relief is not a bar to their receiving whatever relief they may be entitled to. CPLR 103 (subd. [c]) provides that once a court has obtained jurisdiction over the parties in a ‘ civil judicial proceeding ’ the proceeding ‘ shall not be dismissed solely because it is not brought in the proper form, but the court shall make whatever order is required for its proper prosecution’, and CPLR 105 (subd. [d]), which defines ‘ civil judicial proceeding ’ is clearly broad enough to include the instant proceeding, defining a 1 civil judicial proceeding ’ as a 1 prosecution, other than a criminal action, of an independent application to a court for relief. ’ Similarly, CPLR 3017 (subd. [a]) provides, in part, that a court ‘ may grant any type of relief within its jurisdiction appropriate to the proof whether or not demanded’.” (See, also, Matter of Corbeau Constr. Corp. v. Board of Educ., Union Free School Dist. No. 9, 32 A D 2d 958; Matter of Avalon East v. Monaghan, 43 Misc 2d 401; Boomer v. Atlantic Cement Co., 26 N Y 2d 219, 228.)
Accordingly an order may be entered:
(1) Denying respondents’ motion to dismiss and granting respondents 20 days in which to file an answer; and
(2) Ordering a trial forthwith of the issues, pursuant to subdivision (h) of CPLR 7804; directing the Clerk to add the matter to the trial calendar where it should have preferred scheduling when the pleadings and such pretrial or preliminary procedures to which the parties may be entitled have been completed. (CPLR 103, subd. [b].)