Richard S. Heller, J.
This claim, arising from an appropriation of a portion of claimant’s property for highway purposes, was originally tried before this court in April, 1964. The essential findings and details with respect to parcels appropriated were set out in our memorandum decision filed May 2, 1964 and need not be repeated here.
Claimant’s property consisted of approximately 156.735 acres lying west of Front Street, a main commuter artery in the Town of Chenango, Broome County. It was assumed by appraisers for both parties that the highest and best use of the property was for development as a residential subdivision. Access to the developable portion of the property was afforded directly from Front Street over a strip of land approximately 51 feet in width. The project in connection with which the appropriations were made involved the construction of a Federal interstate highway between Front Street and the developable area, and the greater portion of the strip providing access from Front Street was appropriated in fee.
Although the property was bounded on the north by a town road, known as the Dorman Road, a creek and gully immediately south of and parallel with the road effectively cut off access from that direction unless the creek and gully could be feasibly bridged.
*16 The claimant and the- State both submitted proof with respect to the cost of constructing such a bridge. Since the cost of the structure proposed by the claimant far exceeded the difference between the market value with and without access, it would hardly have been appropriate as a means of mitigating or minimizing' damages. The State’s proposal, if its costs estimates were believed, might have provided a means of restoring access of a sort. It was apparent, however, that the bridge and road suggested by the State, and in fact any economically feasible structure, would have to cross and utilize a parcel appropriated for permanent drainage easement purposes in connection with the project.
The State elicited testimony indicating that such use of the parcel would not be inconsistent with its easement and that an application for permission to construct a bridge would in all likelihood be approved. Despite solicitations by the court, however, the State failed to come forward with a stipulation or other binding commitment which would have provided the claimant with the type of protection suggested in Clark v. State of New York (20 A D 2d 182, 190). In view of this refusal or failure on the part of the State, the court felt compelled to disregard the State’s proof with respect to cost of cure and held that access to the property had been completely destroyed.
On appeal, the Third Department (23 A D 2d 136, 138) found that “the claimant’s sole existing means of access was, in fact, destroyed at the outset ” and that the damages assessed by this court were in the range of the proof. The matter was remitted to this court, however, ‘ ‘ to afford the State the opportunity of stipulating in court that a bridge of -suitable size will" be authorized and approved, with a right in perpetuity to the use thereof, or other suitable agreement, otherwise the award should remain in its present amount with the exception that the existing reservation to the claimant be withdrawn, if requested by the State. In the event the State does so stipulate, the award for consequential damages should be based upon the costs of the required bridge, and other present damages, if any, and the right should be reserved to the claimant to make future claims for de facto appropriations in the event of the State’s interference with the said access. ’ ’
Pursuant to the directions of the Third Department, a second trial was held at which the State submitted additional proof with respect to the structure proposed by it at the original trial and1 the claimant submitted an alternative proposal for a bridge and road crossing the easement area. In addition, the State *17 tendered a duly executed quitclaim deed and stipulation complying with the suggestions of the Third Department.
Both of the proposals envisioned a bridge and road crossing the creek and gully and connecting Dorman Boad with an existing rough graded road on claimant’s property, and either would provide a means pf ingress and egress to and from the property. The State’s plan, however, would result in something-akin to a bobsled run in that traffic proceeding from the property to Dorman Boad would be faced with two sharp curves in rapid succession while descending a 10% grade. The claimant’s proposal, while employing essentially the same termini, called for a bridge crossing the stream diagonally and a more gradual and direct descent to Dorman Boad.
The determination of which proposal is most “ suitable ” involves a question of fact (240 Scott, Inc. v. State of New York, 18 N Y 2d 299), and since we are dealing with proposed “ cures ” their “suitability” would ordinarily depend upon the extent to which they would make claimant whole. Thus it has been, stated that “ The prospect of restoring the property to its original condition must, however, be reasonably certain; the owner is not bound to enter upon a doubtful and speculative undertaking for the reclamation of his property.” (4 Nichols, Eminent Domain, § 14.22, p. 520.)
The court does not hesitate to reject the State’s plan as deficient from the standpoint of good engineering or highway design, and therefore finds the claimant’s proposal to be the more “ suitable ” of the two. The proof also compels the finding, however, that neither proposal is ‘ ‘ reasonably certain ’ ’ to restore the property to its original condition. The loss of direct access to and from Front Street, a main commuter artery, unquestionably caused a reduction of value which would not be restored by either proposal and, in fact, could not be restored. The State’s expert’s testimony that the alternative access from Dorman Boad would make the claimant whole was not credible. Since, however, the irreparable damage would clearly be attributable to “circuity of access,” the court would be flouting precedent to even consider finding it compensable.
In following the mandate of the appellate court, we are compelled to let the State give back something that it has taken and thereby violate established law, which we regard as reasonably simple to apply and reasonably certain to produce a just result in most cases. In this case, the problem is compounded by the fact that what is being given back is “ access ” and we are forced to deal with and apply “law” which is infected *18 with traditional distinctions and formulae and examples of “legal logic” which raise more questions than they answer and have been aptly characterized as ‘ ‘ worthy of attention if only for the purpose of understanding their ambiguities ” (1 Orgel, Valuation under Eminent Domain [2d ed.], p. 11).
In Minesta Realty Co. v. State of New York (26 A D 2d 592, 593) this court’s refusal to permit a unilateral modification of an easement was affirmed by the Appellate Division, Third Department, which held that “ The State, after acquiring certain rights by filing the original map and description in the County Clerk’s office, could not, almost three years later, modify and retransfer to the original owner, without its consent, some part of the title and rights thus acquired. ” Several authorities for this principle were cited by this court in its decision in Minesta and in Justice Aulisi’s dissenting opinion upon appeal. (Queensboro Farm Prods. v. State of New York, 6 Misc 2d 445, affd. 5 AD 2d 967, affd. 5 N Y 2d 977; Buffalo Val. Realty Co. v. State of New York, 273 N. Y. 319; Matter of City of Syracuse, 224 N. Y. 201; Kahlen v. State of New York, 223 N. Y. 383; Matter of County of Nassau [Gulf Oil Corp.], 14 A D 2d 577; Matter of Corporation Counsel [Attorney St.], 186 App. Div. 669.)
In the present case, the Third Department apparently based its reversal on the premise that “It is entirely possible that under the present reservation the claimant could create new access to his property and utilize it to its fullest extent, in which case the present award for full value resulting from a loss of the property would be a windfall to which he is not entitled.” (23 A D 2d 136, 138.) There is no denying that the established rule, if followed, might at times bring about a result in 1 ‘ windfalls ” to property owners. Any practicing attorney, however, who has been required to examine and express an opinion upon title to real property for a client is aware of the utter confusion which would result if the courts were to ricldle the rule with exceptions based upon the apparent equities of particular fact situations not discernible in an abstract of title. In view of these questions and the fact that the State has created the problem in the first place, an argument based upon the possibility that certain property owners might receive more than they are equitably entitled to seems to us to lose a great deal of its force.
In addition, since the language of reservation in the present easement taking is substantially identical to that dealt with in Spinner v. State of New York (4 A D 2d 987); Morton v. State of New York (8 A D 2d 49) and Weber v. State of New *19 York (25 A D 2d 584) the court has the distinct feeling that what it has been told to do may be unconstitutional.
With respect to the second problem, it is clear that the overwhelming majority of decisions in New York and other jurisdictions supports the general proposition that, even though an impairment of access causes a measurable and substantial diminution in the value of a given parcel of real property, such diminution is apt to be characterized as ad damnum absque injuria (see 1965 Report, Committee on Condemnation and Condemnation Procedure, Section of Local Government Law, American Bar Association, p. 61 et seq.). While courts have commiserated with many persons who have had the ill fortune to own land abutting the paths of progress, they have attributed certain types of demonstrable and substantial damage to legitimate exercise by municipal authorities of the police power and held that in the absence of statutorily prescribed relief, compensation could not be granted.
It would be foolish to deny that damage arising from circuity of access, for example, even though it be measurable and clearly established, has almost universally been held to be noneompensable. In addition, it is clear that certain decisions of the United States Supreme Court might seem to justify the conclusion that access to a public highway may be restricted or even destroyed without a corresponding obligation to pay just compensation under the Federal Constitution.
While it is obvious that mere inconvenience should not subject a condemning authority to liability, there is no valid reason for denying recovery where a highway improvement project results in substantial and measurable damage to the owner of real property. This view has been adopted by the courts in several States (see Searles, Winds of Change in Eminent Domain, N. Y. L. J., May 25, 1966, p. 4, col. 1) and in our opinion is correct.
The ultimate responsibility for protection of private property rights lies with the courts, and the courts have a duty to do more than defer to the Legislature. Creasy v. Stevens (160 F. Supp. 404, 410, revd. on other grounds sub nom. Martin v. Creasy (360 U. S. 219). In the case just cited, the United States Supreme Court refused to discuss the merits and reversed the granting of an injunction by the District Court on the general grounds of abstention. The principles enunciated by the District Court are, in our opinion, entirely sound insofar as they pertain to the application of the just compensation requirement in access cases.
*20 Unfortunately, however, we are not in a position to deal with this claim in accordance with standards which we believe to be correct. We have been directed to give back to claimant something that was taken from him and must follow these directions. Cauldwell-Wingate Co. v. State of New York (31 N.Y.S. 2d 211, affd. 265 App. Div. 980). Since what we are providing for him is an alternative — but circuitous — means of access, we are foisting a £! cure ” upon him that will not make him whole and yet cannot provide for the uncured damage.
Neither party presented detailed or entirely satisfactory proof in support of his or its proposal. Since, however, neither chose to rebut or seriously question the other’s figures, the court, having adopted claimant’s proposal, has accepted $54,350 (rounded) as the estimated cost .of a bridge, approaches, and finished road which would provide a means of access suitable and adequate for use in connection with a plan of residential development. Since claimant’s existing road was unfinished, the court has deducted that portion of the total estimate attributable to finished -grading, curbs and gutters ($4,350 rounded) and arrived at $50,000 as the cost of cure.
With respect to other possible damages, the court has considered all the proof pertaining to the value of the parcels appropriated in fee and for permanent easement purposes, the probable cost of fine grading and otherwise improving the approximately 700-foot existing access road from Front Street to the point at which such road and its proposed alternative would meet, and the portion of claimant’s property landlocked or otherwise rendered unusable by the appropriation. Since the parcels appropriated were valuable primarily insofar as they provided a means of access and any additional value could be said to be offset by the probable cost of further development of the existing road, no direct damages have been separately assessed and allowed.
It is the determination of the court, therefore, that the claimant is entitled to the sum of $50,000, with interest from February 28,1962 to August 28, 1962, and from September 17, 1962 to the date of entry of judgment.