John P. Cohalan, Jr., J.
On December 3, 1964 Radory Construction Corp. (hereafter Radory), codefendant with and subcontractor to New York Telephone Company (Telephone) exposed, uprooted and caused the toppling of a wooden sustaining pier or pilaster at the southeast corner of plaintiffs’ building at Park Avenue and Union Street, Bay Shore, in Suffolk County.
The incident occurred while Radory was engaged in subsurface work beneath the sidewalk area adjacent to the building, on Union Street, a county road. The digging was done in preparation for the laying of telephone cables to replace poles and overhead wires.
Plaintiffs have sued for damages to the building and also for trespass. The second cause of action embraces not only the trespass as to the pier, but in the trenching area as well. It is the claim of plaintiffs that by virtue of the wording in their deed of conveyance they own to the center of Union Street which includes the portion involved in this accident.
The ad damnum clause of the complaint which in part would compel Telephone to abate the trespass by removing the equipment and apparatus now resting beneath the sidewalk surface of Union Street is given short shrift and such demanded’relief is denied out of hand. In its stead the principle of inverse *334 condemnation, as prayed for in Telephone’s answer, will be invoked.
By testimonial and documentary evidence proof was adduced at the trial before the court sitting without a jury that Radory performed its trenching operation at the precise points and places indicated to it by Telephone. Radory contends, therefore, that if it was negligent it is entitled to common-law indemnification from Telephone. The argument rests on the assumption that Telephone is an active tort-feasor and Radory, as its agent, a passive one at most. Telephone argues, in like manner, that if it is held to be actively or passively negligent it is entitled by virtue of its written contract with Radory to be held harmless for any damages liable to be paid by it to plaintiff. The pertinent provision reads: “ You shall save the Telephone Company, its officers and employees harmless from and against all losses and claims, demands, payments, suits, actions, recoveries and judgments of every nature and description brought or recovered against or sustained by the Telephone Company and arising in consequence of this contract or resulting from, arising out of or in any manner caused by any of said work or the furnishing of any materials hereunder. ”
There is little, if any, doubt that Radory followed its digging instructions to the letter. But Telephone had a right to expect that its codefendant — ■ skilled by long experience in the excavation field — would use enough common sense to perceive the risk of undermining the pier and would take reasonable precautions to install shoring to the extent called for by the conditions prevailing.
Telephone points out, too, that it provided Radory, for its guidance with a manual (Bell ¡System Practices) which, inter alia, prescribed certain safety precautions. Under the general heading of “Conduit and Manholes” and the subheading of “Safety Precautions ”, subdivision 2.01(e) it is noted that: “ To guard against caving, the walls of excavations 3 to 5 feet deep in which men are required to work should be supported by shoring except where the walls are sloped at least 6 inches in each foot.of rise or are in solid rock.” Here the depth of the excavation was about four feet, and the exception in the quoted material does not apply.
Under the same main head and the subheading of “ Protection of Property ”, subdivision 8.01 admonishes: “ Do not undertake construction involving interferences' with foreign property without obtaining the necessary permission. In laying out the line of trench endeavor as far as practicable, to avoid interference with underground structures of other companies or of the *335 municipality. Properly support all exposed structures or structures liable to disturbance due to proximity to the excavation. Where necessary make the support permanent and leave it in the trench.”
Obviously, inasmuch as there was no shoring or sheeting, Radory ignored the admonitions completely.
To the extent that it caused the damage, the court holds Radory to be an active tort-feasor; and to the extent that Telephone participated by the giving of instructions which, carried out blindly, brought about the accident, the latter is held to be a passive wrongdoer.
Plaintiffs are awarded the sum of $1,800 against both defendants as damages to the pier and for the expense of replacement. Telephone is awarded judgment over against Radory, both under common-law principles of indemnity and under its contractual provisions as set forth in the documents received in evidence. (See Kurek v. Port Chester Housing Auth., 18 N Y 2d 450.)
This holding finds support in Bufo v. Orlando (286 App. Div. 88, 90 [1st Dept., 1955] affd. 309 N. Y. 345). There one Orlando, the excavation contractor, recovered judgment over against his general contractor. The theory of recovery was that he followed instructions literally and strictly. Reversing, the Appellate Division noted that: “ Orlando also contends that he was nothing more than an agent following precisely the instructions of his principal and that if held liable, he is entitled to recovery of such amount against his principal [citing cases]. Even if the evidence would support Orlando’s view of his status he clearly was not an innocent agent nor an agent acting without fault, and was not relieved from personal responsibility for his own wrongdoing. (Bhynders v. Greene, 255 App. Div. 401.) Such wrongdoing was stamped as active and primary by the provisions of section 241 and therefore foreclosed recourse to his alleged principal ’ ’.
Here, if we substitute “ the contract” for “ section 241” (Labor Law) we have an all fours’ situation on indemnification with the case at bar.
While plaintiffs ’ deed contains a metes and bounds description which conveys title to the middle of Union 'Street, they have never sought to exercise any dominion over the half of the street so conveyed. A former owner (Fick) erected the subject building within the confines of the building lines as demarcated by the intersection of Park Avenue and Union Street. He did so while in possession of a deed and a survey which indicated his ownership to the center of the street.
*336 In 1868 a condemnation proceeding, pursuant to the then existing statute (now Highway Law, § 170) and case law (Tucker v. Rankin, 15 Barb. 471 [1853]), resulted in the taking by the Town of Islip of the bed of the street. Compensation was then paid to the owner of the land. In 1937. the county took over Union Street as a county highway. Telephone obtained a permit from the county before embarking upon the project.
Prior to the trenching operation telephone poles and wires adorned the territory in relatively the same position overhead as the cables, conduits and ducts now occupy beneath the surface.
The record is silent as to any request having been made for a pole and wire easement to plaintiffs or their predecessors in title; nor is there any other indication that plaintiffs ever asserted any overhead rights.
They do assert correctly, however, that the 1868 condemnation did not convey subsurface rights to the town but merely created an easement for highway purposes. Now they seek damages for alleged injury to their premises held in fee.
They base this claim not on their loss — for what loss have they suffered — but on the benefit to Telephone, whom they label a wrongdoer (Connolly v. Bell, 286 App. Div. 220, mod. 309 N. Y. 581). At pages 229 to 230 the Appellate Division said that: “ The courts are not compelled to limit damages to compensation in that they must always give a sum representing the plaintiffs’ los.s. Damages may, for instance, be measured by the value of property ordered to be returned, if return, is not complied with. Our own courts have in exceptional cases held that a tort-feasor will not be permitted to make a gain through his wrongful act, and have assessed damages measured by the benefit to the wrongdoer (De Camp v. Bullard, 159 N. Y. 450; Bunke v. New York Tel. Co., 100 App. Div. 241, affd. 188 N. Y. 600; Clark on New York Law of Damages, § 350).”
Plaintiffs claim on the basis of this legal postulate and on the testimony of Telephone’s supervising engineer that the damage occasioned amounts to at least $500 or $10 a front foot for their fifty feet fronting on Union (Street. The amount was arrived at on the premise that it would cost twice as much to run the cables along a State road (Montauk Highway) than along the parallel Union Street route. While admitting that in the business area of Bay Shore such a disparity might obtain, viz., that, it would cost twice as much, Telephone’s engineer pointed out that he was speaking of a seven-mile job within the confines of which plaintiffs ’ fifty-foot lies.
He also indicated he had been advised that the State plans to widen Montauk Highway and that that fact entered into Tele *337 phone’s calculations for the location of the underground equipment.
There is a strong current of opinion as expressed in the vigorous dissent of Judges Desmond and Bergan in Heyert v. Orange & Rockland Utilities (17 N Y 2d 352), and in the opinion (concurring in result) of Keating, J., in the same case, that in this era when water and gas mains and electric and telephone cables are placed subsurface as a matter of course, that no additional compensation should be paid to owners who can successfully establish paper title to the center of the highway. The same thought was expressed by Justices Christ and Benjamin in the Appellate Division in the same case (24 A D 2d 592). Until such time as the Legislature acts, however, it would seem that the rule, outmoded as it may be, will continue to have substance and vitality.
Based on the conflicting claims the court finds that the plaintiffs are entitled to $100 for the trespass visited upon them; and again it is awarded against both defendants with a judgment over for Telephone against Radory. The court rejects the argument that it should impose punitive damages against the defendants for the reason that it is obvious they acted in good, if misdirected, faith throughout.
The final issue, that of inverse condemnation, is now to be considered. As noted in plaintiffs’ brief: “For present purposes, it may be assumed that as far as inverse condemnation is concerned, plaintiffs’ damages are nominal.” The court agrees.
If anything, the property of plaintiffs has been enhanced by the installation. Instead of unsightly poles and sagging wires, the conduits are out of sight, if not out of mind, beneath the sidewalk area. Thus, $50 is awarded to plaintiffs for the taking.
In summary, plaintiffs are awarded $1,800 for physical damage and repair, $100 for trespass (both with costs and disbursements) and $50 for inverse condemnation, without costs. The latter sum is to be paid by Telephone alone, with no allowance for indemnification or by virtue of a “ save harmless ” clause in the Radory contract; the other items are to be paid by Radory under the contract provisions.
The condemnation award is to be paid by Telephone upon receipt of a duly executed easement, prepared at Telephone’s expense, in recordable form, permitting Telephone to install and maintain its conduits as a public utility in the public highway.
The cross complaint of Radory is dismissed, without costs.