Chief Judge Fuld.
The claimant owned some 156 acres of land in the Town of Chenango. On the east of the property was Front Street, a main north-south highway, constituting for part of its length TL S. Route 11 and N.Y. Route 12. The only access to the claimant’s land on Front Street was available through an area having a 51-foot frontage on that thoroughfare. The property also extended some 4,100 feet along Dorman Road, a county road running west from Front Street. However, for most of this distance, a deep ravine—at some places 80 feet deep and 200 feet wide — cut off access to the claimant’s land on this Dorman frontage. In February of 1962, the State appropriated, for highway purposes (Highway Law, § 30, subd. 6), .9 acres in fee and two permanent easements .7 acres in area.[1] After reciting that the “ [permanent easements” were for the purpose of “ constructing, reconstructing and maintaining thereon drainage ditches and drainage structures together with *294 appurtenances ’ ’, the appropriation “reserved” to the owner of the property—described as Parcels 605 and 700 where the permanent easements were located — “the right and privilege of using this property providing the exercise of such right and privilege does not, in the opinion of the Superintendent of Public Works, or other authorized representatives acting for the people of the State of New York or its assigns, interfere with or prevent the [State’s] user in exercise of the rights hereinbefore described. ”
Upon the trial in 1964, the claimant took the position that all reasonable means of access to his land had been appropriated and that the remainder had only a nominal residual value. Concededly, to bridge the ravine outside of the easement area involved building a structure whose cost would be prohibitive. The State, however, sought to introduce testimony that a bridge could be built across the permanent easement area taken by the State at a reasonable cost and that permission to do so would be granted by the Department of Public Works. The Court of Claims excluded this evidence on the ground that it was hearsay and that the State had at no time granted, or offered an instrument which would have granted, to the claimant ‘‘ in perpetuity the right of access across the permanent easement taken by the State. ” The court, concluding that the appropriation deprived the claimant of all access to his property, awarded him damages of $71,100.[2] On appeal, the Appellate Division found—and we cull from its opinion—that “the claimant’s sole existing means of access was, in fact, destroyed at the outset”. However, wrote the Appellate Division, “ [i]f the State is amenable to approving the building of a bridge across its drainage easement, ” the award made “would not be sustainable” and, based on this reasoning, reversed and remitted the matter to the trial court “ to afford the State the opportunity of stipulating * * * that a bridge of suitable size will be authorized and approved, with a right in perpetuity to the use thereof, or other suitable agreement”. “ [Otherwise”, the court pointed out, “the award should remain in its present amount ”.
*295 Upon the retrial, the State, following the Appellate Division’s suggestion, tendered a quitclaim deed and a stipulation that a bridge would be authorized and approved. The trial judge, noting that he was constrained, despite his contrary opinion, to adopt the Appellate Division’s view, awarded the claimant the sum of $60,713 as damages instead of $71,100 which he had granted upon the first trial.
From that judgment, the claimant appeals directly to this court, bringing before us, pursuant to CPLB 5601 (subd. [d]), the Appellate Division’s intermediate order of reversal and remand.[3] Such an appeal permits review solely of the Appellate Division determination and, accordingly, we concern ourselves only with the question posed thereby, namely, whether the State may change the terms of the appropriation, or modify its original taking, by filing a correction map or adopting some other procedural device, so as to mitigate the consequences to the owner and reduce the compensable damages to be paid.
The answer to the question must be in the negative. The amount of damages to which the claimant is entitled as the result of an appropriation is to be measured and fixed as of the time of the taking. (See, e.g., Jackson v. State of New York, 213 N. Y. 34, 36; Kahlen v. State of New York, 223 N. Y. 383, 390; Queensboro Farm Prods. v. State of New York, 6 Misc 2d 445, affd. 5 A D 2d 967, affd. 5 N Y 2d 977; Minesta Realty Co. v. State of New York, 26 A D 2d 592.) “ Once the land is actually taken, ” the court wrote in the Kahlen case (223 N. Y. 383, 390, supra), “ the owner cannot be compelled to take it back ”.
It follows from this that the damages must be assessed on the basis of what the State has actually taken, whether or not it intends to use all of the property acquired. (See, e.g., Weber v. State of New York, 25 A D 2d 584, 586.) In the present case, the permanent easements taken were defined in exceedingly broad terms and the provision reserving certain rights and *296 privileges to the owner neither diminished the scope of those permanent easements nor rendered their description ambiguous. In so many words, the reservation in the appropriation left it to the Superintendent of Public Works (or some other authorized official) to say whether the “ right ” which the owner may choose to exercise interfered with the easement acquired by the State. The simple fact is that the State had taken more than it actually needed for its purposes and, when it became apparent years later that it would have to pay for the rights which it had thus unnecessarily acquired, it was willing to return them to the owner by means of a stipulation and a quitclaim deed. As is manifest, the State sought, and the Appellate Division granted, not a clarification of an ambiguity but a modification of the original appropriation. Thus, after acknowledging that “ the claimant’s sole existing means of access was, in fact, destroyed at the outset ’ ’, the Appellate Division went on to say that, if the State declined to agree that the claimant could build a bridge (and use it in perpetuity) across the easement which it had appropriated, “ the award [made by the Court of Claims] should remain in the present amount ”.
The State’s reliance upon Jafco Realty Corp. v. State of New York (18 A D 2d 74, affd. 14 N Y 2d 556) and Clark v. State of New York (20 A D 2d 182, affd. 15 N Y 2d 990) is misplaced. Both involved easements which on their face, as well as by necessary implication, reserved access to the claimants.
In the Jafco case, there was reserved to the claimant a preexisting easement for a right of way to be exercised in a manner that did not “ interfere in any way with the Public use ” but the pre-existing right of way was permanently assured by the condemnor’s construction of its highway on an overpass bridging the claimant’s passageway. And, in Clark, awards were made to the claimants for 90% of the value of a strip of land over which the condemnor appropriated an easement for an electric transmission line and there was reserved to the claimants the fee ownership and any use which did not interfere with the condemnor’s easement. There was—as noted by the Appellate Division (20 A D 2d, at pp. 189-190) — disagreement between the parties as to the construction and meaning of the written instrument which created the easement. The question in the case was whether the ambiguity might be resolved by *297 findings made by the Appellate Division, and it was so resolved. In both cases, we reached our decision that a permanent right of access and use had been reserved to the claimants under the terms of the original taking and not on the basis of a modification of the appropriation by subsequent concessions or stipulations.
The present case is quite different. No one could reasonably expect that the claimant would build a bridge across the easement taken by the State when the appropriation map made it clear that any right possibly reserved to him was terminable at the will of the State. Without some further grant from the State, the claimant had no reasonable means of gaining access to his remaining land. Indeed, as we have already demonstrated, the Appellate Division was fully aware that the easement taken had cut off the claimant’s access and that any right he had to any access was dependent upon what the State might consent to. It was only because the claimant’s existing means of access had been destroyed that the court below found it necessary to suggest that the State might be “ amenable ” to restoring to the claimant, through a stipulation or other agreement, the access which he had lost. Such a procedure or device clearly offends against our settled rule prohibiting the State from attempting to reduce its damages by a subsequent limitation on its original appropriation.
The judgment appealed from should be reversed, with costs in this court and the Appellate Division, and the original judgment rendered by the Court of Claims reinstated.
Judges Burke, Scileppi, Bergan, Keating, Breitel and Jasen concur.
Judgment reversed, etc.

. The appropriation took, in fee and without right of access, Parcels 701 and 702 on Front Street and Parcel 604 on Dorman Road; also from the Dorman Road frontage two permanent easements (Parcels 605 and 700) were taken for drainage purposes.

. The court found that the property was worth $75,000 prior to the taking and $3,900 thereafter.

. Since that nonfinal order is one which “ necessarily affects ” the final judgment of the Court of Claims from which the appeal is taken, CPLR 5601 (subd. [d]) empowers the Court of Appeals to entertain a direct appeal from that judgment in order to review the Appellate Division’s earlier nonfinal determination. (See Buffalo Elec. Co. v. State of New York, 14 N Y 2d 453; see, also, Cohen and Karger, Powers of the New York Court of Appeals, p. 319; 7 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 5601.24 et seq., p. 56-40 et seq.)