KOHL INDUSTRIAL PARK CO. (a Partnership), Plaintiff-Appellee,

v.

The COUNTY OF ROCKLAND, Defendant-Appellant.

No. 713, Docket 82–7693.

United States Court of Appeals, Second Circuit.

Argued Jan. 21, 1983.

Decided June 7, 1983.

Michael J. Goldstein, New York City (Marc L. Parris, County Atty., New City, N.Y., Samuel Goldstein & Sons, New York City, of counsel), for defendant-appellant.

David W. Silverman, New City, N.Y. (Carolyn A.M. Campe, Granik, Silverman, Sandberg, Kirschner, Campbell & Nowicki, New City, N.Y., of counsel), for plaintiff-appellee.

Before MANSFIELD and MESKILL, Circuit Judges, and NEAHER, District Judge.*

MESKILL, Circuit Judge:

The County of Rockland (Rockland) appeals from an order of the United States District Court for the Southern District of New York, Gagliardi, J., granting the motion of plaintiff Kohl Industrial Park Co. (Kohl) for enforcement of a settlement agreement signed by the parties. This agreement was incorporated in a May 11, 1981 district court order that Rockland acquire by eminent domain Kohl's entire legal interest in a thirty acre parcel of land.

Rockland advances three arguments on appeal, namely: (1) the district court's interpretation of the agreement renders it unconstitutional and illegal; (2) the order of the district court cannot be enforced legally because the Rockland County legislature authorized only the acquisition of a permanent easement over Kohl's property and therefore the County Executive is powerless to "take" an interest greater than that approved by the legislature; and (3) the district court's interpretation of the settlement agreement is incorrect both as a matter of fact and law. We are not persuaded by these arguments and accordingly affirm the order of the district court.

## BACKGROUND

Evidence was never presented in the underlying case because the parties settled their dispute prior to trial. However, there is no dispute with respect to the relevant facts. During March 1973, Kohl purchased sixty acres of land in Rockland County. Approximately one year prior to this acquisition, Rockland had authorized a feasibility study to determine the most appropriate measures to prevent flooding in the general area of the Kohl property. After the study was completed, Rockland decided to implement a plan whereby approximately thirty

---

* Honorable Edward R. Neaher, United States District Judge for the Eastern District of New York, sitting by designation.

acres of the Kohl property would be acquired through eminent domain and used as a retention basin for the Nauraushaun Brook. Consistent with this objective, the County in 1977 prepared a legal description of the Kohl property and commissioned a private firm to survey the acreage. Kohl was thereafter notified that Rockland intended to acquire the thirty acre parcel through eminent domain. In January 1980, Rockland with the legislature's approval offered Kohl $850,000 plus absolution of back taxes in exchange for the property. The offer was acceptable to Kohl, but the legislature subsequently withdrew its approval.

After considerable foot-dragging by Rockland, Kohl commenced a federal court action in November 1980. The gravamen of Kohl's complaint was that Rockland officials had delayed eminent domain proceedings in an effort to acquire the thirty acre parcel without just compensation. Kohl specifically charged that even though its property was no longer commercially marketable given Rockland's announced intention to acquire it, the County nonetheless continued to tax this parcel at its former value. According to plaintiff, County officials hoped to delay eminent domain proceedings until Kohl's interest in the acreage was foreclosed for nonpayment of taxes. Kohl maintained that Rockland's conduct was actionable under 42 U.S.C. § 1983 (Supp. IV 1980) as an unconstitutional "taking" of property.

Prior to trial, a settlement agreement was reached and a stipulation of settlement and discontinuance was duly executed and incorporated in an order entered by the district court on May 11, 1981. The order provided that Rockland would (1) engage an appraiser to determine the fair market value of the thirty acre parcel; (2) commence condemnation proceedings with the understanding that Kohl would be compensated for the appraised value of its land; and (3)

simultaneous with its filing of the condemnation petition, "*acquire title* to the subject property." *See* J. App. at 19 (emphasis added).

Rockland subsequently petitioned the County legislature and received permission to acquire the Kohl property by eminent domain. In the interim, however, counsel for the County apparently determined that Rockland could accomplish its anti-flooding objective more economically by obtaining an easement over the portion of the property needed for the retention basin. Rockland thereafter obtained legislative approval to acquire the easement and, on motion by the County, Justice Sullivan of the New York State Supreme Court, Rockland County, approved Rockland's petition to condemn a permanent easement. *See* J. App. at 61.

Kohl then petitioned the district court pursuant to Fed.R.Civ.P. 60(b)(6) to vacate the stipulation and reinstate the original action on grounds that Rockland had breached the settlement agreement. Kohl charged that the settlement agreement obligated Rockland to acquire a fee interest in the disputed acreage and, by refusing to condemn more than an easement, Rockland had failed to satisfy the terms of the agreement. The court agreed that a breach had occurred, but nonetheless denied Kohl's Rule 60(b)(6) motion, explaining that plaintiff's original action was extinguished upon execution of the settlement agreement and could not be reinstated on a Rule 60(b)(6) motion. The court noted, however, that the decision was without prejudice to plaintiff's making a motion for enforcement of the settlement agreement. *See* J. App. at 136. Kohl moved for enforcement of the agreement and the court, after finding a breach by Rockland, ordered the County to condemn Kohl's fee interest in the 30 acres.[1] This appeal followed.

---

1. In his first decision Judge Gagliardi found that the settlement agreement obligated Rockland to acquire from Kohl a fee simple absolute interest in the disputed parcel. It was later brought to the attention of the court that several easements encumbered the acreage in question and hence it would be impossible for Rockland to take a fee simple absolute from Kohl. The court duly noted this fact and ordered Rockland to acquire Kohl's total interest subject to outstanding encumbrances. *See* J.App. at 168, 169.

## DISCUSSION

### A. *Jurisdiction*

Although not raised by the parties, the issue of subject matter jurisdiction warrants brief discussion. Section 1983 provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (Supp. IV 1980).

■ 28 U.S.C. § 1343 (1976), the jurisdictional predicate for section 1983 actions, provides in pertinent part:

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

. . . .

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States

. . . .

Where the plaintiff's complaint alleges sufficient facts to state a cause of action under section 1983, the jurisdictional requirements of section 1343 are satisfied, provided the claim alleged is not "obviously frivolous," "wholly insubstantial," or "essentially fictitious." *See Parratt v. Taylor,* 451 U.S. 527, 532, 101 S.Ct. 1908, 1911, 68 L.Ed.2d 420 (1981); *Carey v. Piphus,* 435 U.S. 247, 249–50, 98 S.Ct. 1042, 1044–45, 55 L.Ed.2d 252 (1978); *Hagans v. Lavine,* 415 U.S. 528, 536–37, 94 S.Ct. 1372, 1378–79, 39 L.Ed.2d 577 (1974); *Bell v. Hood,* 327 U.S. 678, 682–85, 66 S.Ct. 773, 776–77, 90 L.Ed. 939 (1946); *Graseck v. Mauceri,* 582 F.2d 203, 204 (2d Cir.1978), *cert. denied,* 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 91 (1979).

Section 1983 finds its historical roots in the Civil Rights Act of 1871, 17 Stat. 13, a statute "intended to '[create] a species of tort liability' in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus,* 435 U.S. at 253, 98 S.Ct. at 1047 (citing *Imbler v. Pachtman,* 424 U.S. 409, 417, 96 S.Ct. 984, 988, 47 L.Ed.2d 128 (1976)). To state a cause of action under that section, plaintiff must allege that defendant, while acting under color of state law, *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970); *Graseck v. Mauceri,* 582 F.2d at 204 & n. 5, 207; *see Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 172–73, 92 S.Ct. 1965, 1971–72, 32 L.Ed.2d 627 (1972), deprived him of a protected civil or constitutional right, *see City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 258, 101 S.Ct. 2748, 2755, 69 L.Ed.2d 616 (1981); *Monroe v. Pape,* 365 U.S. 167, 172, 81 S.Ct. 473, 476, 5 L.Ed.2d 492 (1961).

■ Official acts of a county satisfy the "under color of state law" component of section 1983. *See Morrison v. Jones,* 607 F.2d 1269, 1273 (9th Cir.1979) (per curiam), *cert. denied,* 445 U.S. 962, 100 S.Ct. 1648, 64 L.Ed.2d 237 (1980); *Redcross v. County of Rensselaer,* 511 F.Supp. 364, 369 (N.D.N.Y. 1981); *see also Monell v. Department of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978) ("Our analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies.") (footnote omitted). We also find that Kohl's complaint alleges sufficient facts, at least for purposes of jurisdictional pleading, to sustain the claim that it has been deprived of a constitutionally protected right. The gravamen of Kohl's complaint is that Rockland wrongfully used its governmental powers intending ulti-

mately to "take" the disputed thirty acres without just compensation. Kohl specifically charges that its property was rendered commercially unmarketable when Rockland announced its intention to acquire this land by eminent domain. According to Kohl, the County intentionally delayed eminent domain proceedings while continuing to tax the Kohl parcel at full value with the expectation that this squeeze play ultimately would cause Kohl to forfeit its property interest through foreclosure for nonpayment of taxes.

The eminent domain power of the state has long been recognized as a necessary and important incident of its sovereignty. *People v. Adirondack Railway,* 160 N.Y. 225, 236–37, 54 N.E. 689, 692 (1899), *aff'd,* 176 U.S. 335, 20 S.Ct. 460, 44 L.Ed. 492 (1900); *Heyward v. New York,* 7 N.Y. 314, 324 (1852). Although largely unrestrained, the governmental right to "take" private property for a public use is subject to the constitutional limitation that just compensation be paid to the individual whose property is acquired by the government. *See* U.S. Const.Amends. V, XIV; N.Y. Const. Art. I, § 7. Reported decisions in New York have consistently reaffirmed the constitutional right to just compensation when property is taken by the state. *See People v. Adirondack Railway,* 160 N.Y. at 239, 54 N.E. at 693 ("Safeguards become necessary only when the question of compensation is reached, and then the courts are careful to see that the owner receives all that he is entitled to."); *City of New Rochelle v. Sigel,* 65 Misc.2d 962, 964–65, 319 N.Y.S.2d 208, 211 (N.Y.Sup.Ct.1970).

■ The New York courts have duly recognized that judicial intervention is necessary where the state seeks to circumvent its constitutional duty to pay fair compensation for private property condemned through eminent domain: "The limits of police power may be extensive, although ill-defined, but common justice requires that such power should not be used to circumvent the constitutional inhibition against appropriating private property for a public use without compensation." *Her-*

*kimer Pulp & Packaging Corp. v. McMorran,* 45 Misc.2d 127, 134–35, 256 N.Y.S.2d 377, 384 (N.Y.Sup.Ct.1964), *aff'd,* 24 A.D.2d 929, 264 N.Y.S.2d 848 (3d Dep't 1965); *see Wolfe v. New York,* 53 Misc.2d 14, 19, 277 N.Y.S.2d 985, 990 (N.Y.Ct.Cl.1967) ("The ultimate responsibility for protection of private property rights lies with the courts, and the courts have a duty to do more than defer to the Legislature."), *rev'd on other grounds,* 22 N.Y.2d 292, 292 N.Y.S.2d 635, 239 N.E.2d 517 (1968).

■ Kohl asserts in its complaint that Rockland intended, through use of governmental taxing and eminent domain power, to "take" its property without just compensation. We are satisfied that the constitutional deprivation alleged here is not "obviously frivolous," *see Hagan v. Lavine,* 415 U.S. at 536–37, 94 S.Ct. at 1378–79, and is sufficient to meet the pleading requirements of section 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343 (1976). Since the district court entered a settlement order in a case over which it had jurisdiction, it is not open to us to examine the merits of the now-extinguished original lawsuit. Having found subject matter jurisdiction to hear this dispute, we hold that the district court has the power to enforce the settlement agreement entered into by the parties and formally approved through court order. *See Meetings & Expositions, Inc. v. Tandy Corp.,* 490 F.2d 714, 717 (2d Cir.1974), *cited with approval in Sanchez v. Maher,* 560 F.2d 1105, 1108 (2d Cir.1977).

## B. *Substantive Claims*

### 1. *Constitutionality of Taking*

Counsel for Rockland crafts a creative, albeit unpersuasive, constitutional argument in an effort to evade its obligation under the settlement agreement. The County asserts that its eminent domain powers are limited by the constitutional prohibition against "taking" private property in excess of that amount necessary to accomplish the intended public use. Rockland notes that it could satisfy its antiflooding objective simply by "taking" an

easement in the Kohl property and hence the acquisition of a fee simple interest would amount to an unconstitutional taking of a property interest greater than that necessary to achieve its public purpose.

■ We agree that a county has no *right* under its eminent domain power to condemn an estate in excess of that which is needed to accomplish the intended public purpose. *See Hallock v. New York,* 32 N.Y.2d 599, 605, 347 N.Y.S.2d 60, 64, 300 N.E.2d 430, 432 (1973); *Mayo v. Windels,* 255 A.D. 22, 27, 5 N.Y.S.2d 690, 693 (2d Dep't 1938), *aff'd,* 281 N.Y. 837, 24 N.E.2d 494 (1939). This constitutional restriction does not, however, preclude the county from negotiating and then acquiring, *with the owner's consent,* an estate greater than necessary to satisfy the immediate public interest. *See Sherman v. McKeon,* 38 N.Y. 266, 274 (1868); *Embury v. Conner,* 3 N.Y. 511, 518 (1850); *see also Winslow v. Baltimore & Ohio Railroad,* 208 U.S. 59, 62, 28 S.Ct. 190, 191, 52 L.Ed. 388 (1908) (owner of private property cannot complain of unconstitutional taking where owner consents to that taking); *Mayo v. Windels,* 255 A.D. at 27, 5 N.Y.S.2d at 693.

The "consent doctrine," first adopted by the New York courts in *Embury v. Conner,* 3 N.Y. 511 (1850), recognizes that the constitutional limitation on the state's eminent domain power was intended to protect the private property owner from the misuse of that power, *not* shield the government from its contractual obligations under the guise of concerns about excessive taking. *Id.* at 518; *see Mayo v. Windels,* 255 A.D. at 27, 5 N.Y.S.2d at 693. The state occupies a position of disproportionate strength when wielding its eminent domain power. Indeed, as an incident of its sovereignty, the state may take all property necessary for public use as long as just compensation is paid. The private property owner is at the mercy of the state; he cannot forestall the taking by objection or court decree as long as his property is necessary for a public use. A wholly different case is presented when the private property owner consents to the proposed condemnation. In that situation,

the constitutional limitation on the state's eminent domain power is not needed to protect the property owner from an excessive taking.

■ The reported decisions fully support the view that the constitutional limitation on the state's eminent domain power was intended to protect the property owner, *not* the government. *See, e.g., Embury v. Conner,* 3 N.Y. at 511; *see also Hallock v. New York,* 32 N.Y.2d at 605, 347 N.Y.S.2d at 64, 300 N.E.2d at 432; *Mayo v. Windels,* 255 A.D. at 27, 5 N.Y.S.2d at 693. Appellant cites no case, and we find none, where the state has relied on the "necessity" doctrine to evade a contractual obligation. We will not allow Rockland to be relieved from its lawful obligation because, now, with the benefit of hindsight, it wants to renege on its agreement. Absent a showing of collusion or fraud, when the parties have consented to the taking, the constitutional limitation on the state's power of eminent domain is inapplicable.

### 2. *Legality of Taking*

Rockland asserts that the district court erred by ordering it to condemn a property interest greater than that necessary for public use. Rockland claims that the acquisition of more than an easement in the Kohl property would be wasteful and illegal and hence potentially would subject the County to a citizen's suit on these grounds.

We are not persuaded by this argument. Rockland has not shown that it would be liable for waste or illegality for condemning a fee interest rather than an easement. The New York courts show due deference to the state when it exercises sovereign powers:

In the absence of illegality, fraud, collusion, corruption or bad faith, the Court has no power to restrain the city from entering into or carrying out any agreement which it chooses to make. The terms 'waste' and 'injury', as used in the statute, comprehend only wrongful, dishonest or illegal official acts, and are not intended to subject the action of an administrative official, acting within the

limits of his authority and jurisdiction, to the scrutiny and control of a judicial tribunal.

*Hanrahan v. Corrou,* 12 N.Y.S.2d 536, 539, 170 Misc. 922, 925 (N.Y.Sup.Ct.1938), *quoted in Borek v. Golder,* 190 Misc. 366, 390, 74 N.Y.S.2d 675, 697 (N.Y.Sup.Ct.1947).

■ Rockland cites no case where the exercise of the county's eminent domain power has been successfully challenged through citizen suit on grounds of waste or illegality. Rather, the County relies on cases where the plaintiff alleges a wrongful award of a government contract, *see Campbell v. City of New York,* 244 N.Y. 317, 328, 155 N.E. 628, 629 (1927), and charges wrongful distribution of cable television franchises, *see Orth-O-Vision, Inc. v. City of New York,* 101 Misc.2d 987, 989–90, 422 N.Y.S.2d 781, 784 (N.Y.Sup.Ct.1979). The absence of direct authority is not surprising, however, because the courts have traditionally accorded the state considerable discretion when exercising its "taking" power. *People v. Adirondack Railway,* 160 N.Y. 225, 239–40, 54 N.E. 689, 693 (1899), *aff'd,* 176 U.S. 335, 20 S.Ct. 460, 44 L.Ed. 492 (1900); *see Berman v. Parker,* 348 U.S. 26, 32, 75 S.Ct. 98, 102, 99 L.Ed. 27 (1954) (once the legislature has declared a condemnation to be for a public use, the role of the courts is an extremely narrow one). In a representative democracy, extravagance and waste in the use of eminent domain are remedied better at the ballot box than at the courthouse. Rockland is not barred on grounds of illegality or waste from fulfilling its obligations under the settlement agreement.

### 3. Compliance with District Court Order

Rockland advances two additional theories under New York eminent domain law to support its claims on appeal.

**2.** We reject Rockland's argument that a public hearing should be held to ascertain the appropriate estate necessary for public use. Section 206 of the E.D.P.L. provides that:

#### a. Legality of Compliance Under State Law

The County asserts that it cannot legally comply with the district court order mandating that it "take" by eminent domain Kohl's entire fee interest in the disputed acreage. Rockland points out that under New York law it must obtain the approval of the County legislature before exercising its "taking" powers. Thus, according to Rockland, since the legislature has indicated that it will approve only the condemnation of an easement over the Kohl property, compliance with the district court order would require it to act beyond its legal authority.

■ But the County legislature *did* approve the settlement agreement signed by Rockland and Kohl. *See* J.App. at 107–09. Indeed, the legislature specifically authorized Rockland to *acquire* the Kohl parcel abutting the Nauraushaun Brook. *See* J.App. at 107. Thus, there is no legal bar under this theory to prevent Rockland from condemning a fee interest in the Kohl property.

#### b. Prior Legislative Approval

Section 204 of the New York Eminent Domain Procedure Law, N.Y.E.D.P.L. § 204 (McKinney 1979), requires a condemnor to certify and approve the intended public use of a property *before* commencing eminent domain proceedings. Rockland asserts that the district court usurped the County's governmental function under section 204 by ordering the County to "take" an interest without certification and approval as necessary for the public good.

■ This argument is circular. The district court did not usurp the County's governmental function under section 204, it merely accepted a settlement agreement voluntarily entered by the parties and approved by the County legislature, pursuant to section 204.[2]

> The condemnor shall be exempt from compliance with the provisions of this article when:
>
> (A) pursuant to other state, federal, or local law or regulation it considers and sub-

### 4. *Interpretation of Agreement*

Finally Rockland asserts that the parties could not have contemplated the "taking" of an entire fee simple interest because the Kohl property was encumbered by several outstanding easements. Hence, according to Rockland, the Court should interpret the parties' use of the term "acquire title" as a reflection of their intent to condemn an easement as opposed to a fee interest.

 This argument is frivolous. As with any settlement agreement or contract, we look first at the plain language of the agreement. *Sanchez v. Maher,* 560 F.2d 1105, 1108 (2d Cir.1977). The agreement, as incorporated in the district court order, provides that Rockland will "acquire title to the subject property." *See* J.App. at 29. When no limiting language is included in the conveyance document, "title" is understood to mean a fee interest, not an easement. 2 G. Thompson, Law of Real Property § 319 (1980); *see generally Hallock v. New York,* 32 N.Y.2d at 605, 347 N.Y.S.2d at 64, 300 N.E.2d at 432 ("We note in particular that the statute, under which the State would carry out the Authority's determination as to what real property is reasonably necessary for the project, explicitly authorized the acquisition of '*interests in such property less than full title, such as easements.*' ") (citing Highway Law, § 30, subd. 2) (emphasis added). When a prospective purchaser seeks to acquire an easement, New York courts require that party to identify with specificity the location and intended use for the estate. *See Clark v. Devoe,* 124 N.Y. 120, 125–26, 26 N.E. 275, 276 (1891); *see also Raymond v. New York,* 208 Misc. 43, 46, 143 N.Y.S.2d 354, 358 (Ct. Cl.1955), *rev'd on other grounds,* 4 A.D.2d 62, 162 N.Y.S.2d 838 (4th Dep't 1957), *aff'd,* 4 N.Y.2d 961, 175 N.Y.S.2d 829, 151 N.E.2d 624 (1958).

 Here, Rockland never identified in the settlement agreement the type of estate that it expected to "take" from Kohl except to note that it would "acquire title." Because, in the absence of limiting language, "title" is commonly understood to mean a fee interest, Rockland cannot now be heard to complain when it failed to specify its intent to condemn a lesser estate. Moreover, Rockland's conduct during the settlement negotiations belies its assertion that at the time the agreement was executed it intended only to condemn an easement in the Kohl property. *See Raymond v. New York,* 208 Misc. at 46–47, 143 N.Y.S.2d at 358 (where there is uncertainty in the description of the property to be taken by eminent domain, the "court will look at the circumstances existing when the proceedings commenced," the "subject matter of the documents involved," and the "intention should be determined from the various instruments in connection with acts of parties"). On January 25, 1980, in one of the early communications leading to the settlement, counsel for Rockland informed Kohl that it "will acquire in fee [the Kohl parcel]." *See* J.App. at 111. While the negotiations were in progress, the County legislature authorized Rockland to "acquire title." *See* J.App. at 107–09. Finally, and most persuasive, Rockland's special counsel advised the County attorney in a letter dated July 16, 1981, that: "As we discussed on the telephone, I would like the County to consider taking a step which I believe could result in a potential substantial saving. I would like the County to consider *changing the nature of the taking from fee to permanent easement.*" *See* J.App. at 133 (emphasis added). This letter, written *after* the settlement agreement was executed in May 1981, completely discredits Rockland's position here.

---

mits factors similar to those enumerated in subdivision (B) of section two hundred four [*i.e.* public use, environmental effects, etc.], to a state, federal or local governmental agency, board or commission before proceeding with the acquisition and obtains a license, a permit, a certificate of public convenience or necessity or other similar approval from such agency, board, or commission . . . .

N.Y.E.D.P.L. § 206 (McKinney 1979). Rockland presented its plan of acquisition to the County legislature in April 1981. The legislature considered Rockland's request and approved the "taking" of "title" to the Kohl property. No hearings are necessary. *Aswad v. City School District of Binghamton,* 74 A.D.2d 972, 972–73, 425 N.Y.S.2d 896, 898 (3d Dep't 1980).

The record reveals that at the time the agreement was executed, the County fully intended to acquire Kohl's entire legal interest in the disputed acreage. After agreeing to "take" this property interest by eminent domain, the County apparently decided that it could accomplish its public purpose more economically by condemning only an easement. But Rockland had previously entered into a valid settlement agreement and it is bound by the terms of that agreement.

Affirmed.

NEAHER, District Judge (dissenting):

I respectfully dissent. The federal courts should not permit § 1983 to be used as a means to obtain undeserved payment from public funds. In this action, Kohl never had a valid claim; the complaint alleges an uncompensated "taking", but presents no facts which would allow a court to find a fifth amendment violation. Moreover, the relief Kohl seeks, an order compelling the condemnation of a fee simple interest, is not a remedy any court could provide to Kohl. As discussed below, this action should be remanded to the district court for the purpose of entertaining a motion to dismiss for failure to state a cause of action.

Despite Kohl's allegations of extensive activity by Rockland, no formal steps toward condemnation were ever taken. Most importantly, none of the actions taken by Rockland, nor the totality of its conduct, amounts to a de facto taking of the Kohl property. Ordinarily, a taking does not result before formal condemnation proceedings are commenced. As courts have repeatedly acknowledged public projects often go through many formative steps and alterations, and may even be abandoned, before condemnation proceedings are necessary. The state simply does not incur liability for a taking each time it speculates as to whether a particular property owner's land might be made subject to eminent domain.

In *Danforth v. United States,* 308 U.S. 271, 285, 60 S.Ct. 231, 236, 84 L.Ed. 240 (1939), for example, the Supreme Court acknowledged that "[a] reduction or increase in the value of property may occur by reason of legislation for or the beginning or completion of a project. Such changes in value are the 'incidents' of ownership. They cannot be considered as a 'taking' in the constitutional sense." More recently, in *Agins v. City of Tiburon,* 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980), the Court primarily considered and rejected allegations that certain zoning ordinances rose to the level of a taking. Addressing additional contentions that an "aborted attempt to acquire the land through eminent domain had destroyed the use of the land during the pendency of the proceedings," *id.* at 259 n. 3, 100 S.Ct. at 2140 n. 3 the Court found:

> "The State Supreme Court correctly rejected the contention that the municipality's good-faith planning activities, which did not result in successful prosecution of an eminent domain claim, so burdened the appellants' enjoyment of their property as to constitute a taking.... Even if the appellants' ability to sell their property was limited during the condemnation proceeding, the appellants were free to sell or develop their property when the proceedings ended. Mere fluctuations in value during the process of governmental decision-making, absent extraordinary delay, are 'incidents of ownership.'" *Id.* at 263 n. 9, 100 S.Ct. at 2143 n. 9 (citation omitted; quoting *Danforth, supra* ).

The *Danforth* and *Agins* decisions both concerned condemnation proceedings which had been commenced and abandoned. More specific to the Kohl action, the highly regarded, well-reasoned New York Court of Appeals decision in *City of Buffalo v. J.W. Clement Company,* 28 N.Y.2d 241, 321 N.Y. S.2d 345, 269 N.E.2d 895 (1971), held that when no formal condemnation proceedings have begun, no taking can ever result.[1]

1. *Accord, e.g., Chacon v. Granata,* 515 F.2d 922, 925 (5th Cir.), *cert. denied,* 423 U.S. 930, 96 S.Ct. 279, 46 L.Ed.2d 258 (1975); *Sayre v. City of Cleveland,* 493 F.2d 64, 70 (6th Cir.),

*cert. denied,* 419 U.S. 837, 95 S.Ct. 65, 42 L.Ed.2d 64 (1974); *Thompson v. Tualatin Hills Park & Recreation District,* 496 F.Supp. 530, 539–45 (D.Ore.1980); *United States v. 3.66*

J.W. Clement Company ("Clement"), the owner of the property condemned in *City of Buffalo,* had purchased it in 1946, had made extensive improvements, and for years had operated a worldwide printing company from that location. In late 1954, the City of Buffalo began investigating an urban renewal project, and by 1957, Clement was formally notified that its property would be taken sometime between 1960 and 1962. In 1960, public officials stated that Clement's property must be vacated within three or four years; in 1961, the proposed time for condemnation was set at between eighteen and twenty-four months; in the summer of 1962, the mayor of Buffalo stated that condemnation would occur in the spring of 1963; early in 1963, written notification to Clement proposed public acquisition in May 1963. Because its business utilized massive machinery, Clement began relocating in 1961, and had fully moved its operations by April 1963. At that time, the court observed, the property was "both unsaleable and unrentable, ... and all efforts to procure even a short-term tenant proved unsuccessful. Clement, however, as owner in fee, continued to pay taxes and insurance and to maintain the property at its own expense while urging the city to complete the condemnation." *Id.* at 249, 321 N.Y. S.2d at 352, 269 N.E.2d at 900. Formal condemnation did not occur until 1968.

Rejecting Clement's argument that a *de facto* taking actually occurred in April 1963, the Court of Appeals held that the threat of condemnation could never constitute a tak-

ing. The court distinguished a *de facto* taking, which it found to involve "a physical entry by the condemnor, a physical ouster of the owner, a legal interference with the physical use, possession or enjoyment of the property or a legal interference with the owner's power of disposition of the property." *Id.* at 255, 321 N.Y.S.2d at 357, 269 N.E.2d at 903. The court also clarified the legal impact of "condemnation blight," which allows an owner whose property is condemned to recover compensation "based on the value of the property *at the time of the taking,* as if it had not been subjected to the debilitating effect of a threatened condemnation." *Id.;* 321 N.Y.S.2d at 357, 269 N.E.2d at 903 (emphasis supplied).

The court found meritless assertions that a *de facto* taking could result from extensive municipal planning, and refused to award damages based on losses incurred at any time during the planning period. The court reasoned:

"We simply have a manifestation of an intent to condemn and such, even considering the protracted delay attending final appropriation, cannot cast the municipality in liability upon a theory of a 'taking' for there was no appropriation of the property in its accepted legal sense....

"Moreover, strong policy considerations prohibit a finding of a *de facto* taking in the instant case. To hold the date of the *announcement* of the impending condemnation, whether directly to the con-

*Acres of Land, More or Less, situated in the City and County of San Francisco, State of California,* 426 F.Supp. 533, 535 (N.D.Calif. 1977); *Hempstead General Hospital v. Whalen,* 474 F.Supp. 398, 409–11 (E.D.N.Y.1979), aff'd mem., 622 F.2d 573 (2d Cir.1980); *Niagara Frontier Building Corp. v. State,* 28 N.Y.2d 755, 756, 321 N.Y.S.2d 368, 368–69, 269 N.E.2d 912, 912 (1971); *Latham Enterprises, Inc. v. State,* 12 N.Y.2d 707, 233 N.Y.S. 762, 186 N.E.2d 120 (1962); *Mickel v. State,* 77 A.D.2d 794, 794–95, 430 N.Y.S.2d 741, 742 (4th Dep't 1980), aff'd, 54 N.Y.2d 858, 444 N.Y.S.2d 916, 429 N.E.2d 423 (1981); *In Re Block Bounded by Smith Street, 5th Street, Hoyt Street, 4th Street, Bond Street, Gowanus Canal and 7th Street, in the Borough of Brooklyn, City of New York,* 75 A.D.2d 605, 426 N.Y.S.2d 1019 (2d Dep't 1980);

*New York Telephone Co. v. State,* 67 A.D.2d 745, 746, 412 N.Y.S.2d 223, 224 (3d Dep't 1979); *Fisher v. City of Syracuse,* 46 A.D.2d 216, 217, 361 N.Y.S.2d 773, 775–76 (4th Dep't 1974), appeal denied, 36 N.Y.2d 642, 368 N.Y. S.2d 1025, cert. denied, 423 U.S. 833, 96 S.Ct. 57, 46 L.Ed.2d 51 (1975); *In re Incorporated Village of Lynbrook,* 75 Misc.2d 678, 679–82, 348 N.Y.S.2d 115, 117–19 (Sup.Ct., Nassau County, 1973); *Beaux Arts Properties, Inc. v. United Nations Development Corp.,* 68 Misc.2d 785, 790–93, 328 N.Y.S.2d 16, 22–24 (Sup.Ct., New York County), aff'd, 39 A.D.2d 844, 332 N.Y.S.2d 1008 (1st Dep't 1972); *see Indiana Hospital Association v. Schweiker,* 544 F.Supp. 1167, 1184–85 (S.D.Ind.1982); *Kohlasch v. New York State Thruway Authority,* 482 F.Supp. 721, 724 (S.D.N.Y.1980).

demnee or by the news media, constitutes a *de facto* taking at that time, would be to impose an 'oppressive' and 'unwarranted' burden upon the condemning authority. At the very least, it would serve to penalize the condemnor for providing appropriate advance notice to a property owner. And to so impede the actions of the municipality in preparing and publicizing plans for the good of the community, would be to encourage a converse policy of secrecy which 'would but raise [greater] havoc with an owner's rights.'" *Id.* at 255–56, 321 N.Y.S.2d at 357–58, 269 N.E.2d at 903–04 (emphasis in original; citations omitted).

Not only is Kohl's action controlled by *City of Buffalo,* but Kohl presents a far less compelling allegation of hardship than that case. The record here is devoid of any indication of Kohl's ability or desire at any time to develop this land; apparently, Kohl never sought to improve, rent, or sell the property, and in fact purchased it well after Rockland's flood control plans were being investigated. The complaint reveals that Kohl failed to pay property taxes for some time in 1977 and 1978, and that Rockland had already obtained all of the Kohl property through a tax sale, subject to Kohl's right to redemption within three years. The settlement agreement presently at issue itself reveals that Kohl's imminent loss of the property, resulting from its own inability to pay its taxes, precipitated this lawsuit: Kohl's two concerns were that Rockland would obtain title through condemnation before the end of the redemption period, and that Kohl would be absolved of liability for unpaid taxes.

Certainly nothing in the Constitution protects Kohl from the burden of paying taxes. Furthermore, whatever Kohl's plans when it purchased this property, Rockland cannot be made liable simply because Kohl mispredicted the timing of the condemnation: "The just compensation clause ... [is] certainly not intended to relieve real estate developers of the burdens of business decisions that do not turn out to be correct." *Thompson, supra* n. 1, 496 F.Supp. at 543.

Kohl's claim was dismissed initially, however, not because it was meritless, but because the parties settled. To enforce that settlement, however, the district court would be required to order Rockland to condemn more of Kohl's property than the county legislature has found to be necessary for the public use. *See Hallock v. State,* 32 N.Y.2d 599, 605, 347 N.Y.S.2d 60, 64, 300 N.E.2d 430, 432 (1975) ("In general there may not be the acquisition of a fee when only an easement is required."); *e.g., Kupersmidt v. New York Telephone Co.,* 54 Misc.2d 332, 336, 282 N.Y.S.2d 605, 609 (Sup. Ct., Suffolk County, 1967) (condemnation of road bed resulted in acquisition of permanent easement; private owner retained fee title).

The timing of condemnation, and the extent and nature of the estate to be condemned, are decisions which can be made only by a legislature. *E.g., In re Board of Water Supply of the City of New York,* 277 N.Y. 452, 455, 14 N.E.2d 789, 790 (1938); *Cinco v. City of New York,* 58 Misc.2d 828, 296 N.Y.S.2d 26, 30 (Sup.Ct., Queens County, 1968). The Rockland County legislature has authorized condemnation of a permanent easement over approximately thirty acres of Kohl's sixty-acre estate, and the state court has already condemned that interest.

Kohl now asks that a federal court supplant that legislative decision and state court action with its own order. No court could force Rockland to exercise its powers of eminent domain when it has expressly chosen not to do so. Absent a *de facto* taking by state action, no court could condemn an interest in property without legislative authorization. However commendable the district court's efforts to settle this action, the settlement agreement simply cannot be enforced.

Moreover, Kohl's insistence on the condemnation of a fee interest rather than a permanent easement seeks a windfall at Rockland's expense. The parties agree that a permanent easement and a fee simple would be valued so as to result in the same compensation, and Rockland has agreed to assume the tax obligations, if any, Kohl may incur by remaining the technical owner

of the estate. At issue is the impact of the condemnation on the thirty acres of Kohl's estate not taken by Rockland.

By retaining a fee interest in the condemned thirty acres, Kohl would be entitled to develop its remaining thirty acres according to a density allowance based upon the entire sixty acres. If Rockland instead condemned a fee interest, the density allowance would be reduced accordingly, and Kohl would be entitled to consequential damages. Because the thirty acres retained by Kohl do not appear conducive to this developmental opportunity, Kohl is attempting to manufacture the increased consequential damages.

Kohl has already received more through its settlement of this meritless action than it ever was entitled to by law. To assist Kohl in its efforts to obtain increased and undeserved consequential damages through a highly questionable exercise of judicial authority would be to encourage similar actions brought in an abuse of § 1983 jurisdiction. I cannot condone such a result, and I am compelled to dissent.